Thalia **MATHERSON** and Verna
G. **Mitchell**, Appellants,

v.

Elsie **POPE**, Hazel Pope, Mandy
**Anderson**, and Patricia
**Culliver**, Appellees.

No. 05–92–01470–CV.

Court of Appeals of Texas,
Dallas.

April 2, 1993.

Richard L. Stanford, Stanford & Dunaway, Dallas, for appellants.

Steve R. Akers, Jenkens & Gilchrist, P.C., Brenda C. Salhanick, Michael J. Vernone, Settle & Pou, P.C., Dallas, for appellees.

Before LAGARDE, MALONEY and MORRIS, JJ.

## OPINION

MORRIS, Justice.

Through hard work and money-saving habits, Lee Jess Davis accumulated before his death an estate worth hundreds of thousands of dollars. Unfortunately, he died without a will. Making things worse, Lee Jess died without a clear family history. This is not to say, however, that Lee Jess died without a family. Indeed, this case is about which of Lee Jess's competing families has the right to claim his valuable estate. The answer to that question depends on who was Lee Jess's father.

Thalia Matherson and Verna G. Mitchell, appellants, are sisters. Their father and Lee Jess's mother were brother and sister, making Thalia and Verna first cousins of Lee Jess. Lee Jess's mother was Melvina Brown. Melvina's first cousin was Edith Brown. Edith married Thomas Luke Pope. Edith and Thomas Luke Pope had four children: Elsie Pope, Hazel Pope, Mandy Pope Anderson, and Evangeles (Jack) Pope. Evangeles died before Lee Jess. He was survived by his daughter, Patricia Culliver. Elsie, Hazel, Mandy, and Patricia are appellees.

Lee Jess died on July 8, 1989, at the apparent age of seventy-five years. At the time of his death, Lee Jess was a single man without surviving children. Thalia, as administratrix of Lee Jess's estate, filed in the probate court an application to determine heirship. In the application Thalia stated it would be necessary to determine the identity of Lee Jess's biological father in order to determine the identity of his heirs. She acknowledged that either a man named Frank Davis or Thomas Luke Pope, both deceased, could be Lee Jess's biological father. If Frank Davis were determined to be Lee Jess's biological father, appellants as his first cousins are potential heirs. If Thomas Luke Pope were determined to be Lee Jess's biological father, appellees would be respectively his half-sisters and the surviving daughter of his deceased half-brother. As such, they would be potential heirs of Lee Jess, to the exclusion of appellants.

On April 2, 1992, the probate court held a hearing on the application to determine heirship. At the hearing it was shown that in the early 1900s in Carthage, Texas, Thomas Luke Pope was courting at the same time both Melvina and Edith Brown. Melvina became pregnant about this time and gave birth to Lee Jess in 1914.[1] There is no indication that Melvina was married at the time of Lee Jess's birth. After Lee Jess was born Melvina married Frank Davis and Thomas Luke Pope married Edith Brown.

Appellants called several witnesses to testify on their behalf. L.B. Brown, Lee Jess's second cousin, testified Frank Davis raised Lee Jess. He stated Lee Jess probably stayed with Davis until 1936. Brown testified that as far as he knew Lee Jess was not raised by anyone else.

Eula Wilson also testified Frank Davis raised Lee Jess. Wilson stated Lee Jess was living with Davis and Melvina when she visited them. She stated Lee Jess never lived any place other than in Davis's home during his childhood. Laverne Brown Harris also testified Frank Davis raised Lee Jess.

---

1. There was conflicting evidence regarding Lee Jess's year of birth, as two birth certificates bearing his name were admitted into evidence at the hearing. One certificate listed his birth year as 1914 and the other listed the year as 1920. Matherson testified she believed Lee Jess was born in 1914.

Several witnesses testified on appellees' behalf. Vivian Bush, a close friend of Lee Jess for twenty-six years, testified Lee Jess told her Thomas Luke Pope was his natural father. Lee Jess went by the name of Pope during his early childhood. Lee Jess told Vivian that he and his mother lived with Pope until he was two years old, at which time Pope left and began living with his mother's first cousin, Edith Brown.

Odell Mitchell, who knew Lee Jess from childhood and had joined the army with him, testified Thomas Luke Pope would bring Lee Jess over to his house when he and Lee Jess were children so they could play together. According to Mitchell, Pope told him Lee Jess was his son and he heard Pope refer to Lee Jess as "my son" and "my boy." When asked where Lee Jess lived when he was a child, Mitchell testified Lee Jess lived with his "mommie and daddy." Mitchell named Thomas Luke Pope as Lee Jess's "daddy."

Following the hearing the probate court rendered judgment that appellees were Lee Jess's heirs. The probate court made findings of fact and conclusions of law. The probate court found Thomas Luke Pope openly held out Lee Jess as his biological child and that Thomas Luke Pope was the biological father of Lee Jess.

In their sole point of error, appellants contend the probate court erred as a matter of law in determining Thomas Luke Pope was Lee Jess's biological father because section 42(b)(1) of the Texas Probate Code does not allow appellees to prove this fact. Appellants argue section 42(b)(1) only allows an illegitimate child to establish inheritance rights in his deceased biological father's estate and that it does not permit such a child's collateral relatives to establish inheritance rights in the deceased illegitimate child's estate.

■ Section 42(b)(1) provides the exclusive means by which an illegitimate child may establish the right to inherit from his biological father. *See Mills v. Edwards,* 665 S.W.2d 153, 154–55 (Tex.App.—Houston [1st Dist.] 1983, no writ). The statute describes five different ways by which such a child may show his right to inherit.

Each of the methods described allows inheritance rights to be shown upon an actual or presumptive showing of the biological father's paternity. In effect, section 42(b)(1) permits an illegitimate child to rely on (1) a presumption of paternity under the provisions of section 12.02 of the Family Code, (2) a court decree adjudicating paternity under Chapter 13 of the Family Code, (3) his adoption by his father, or (4) a statement of paternity executed by his father in accordance with the provisions of section 13.22 of the Family Code. In addition, as a fifth method of establishing paternity and therefore the right to inherit under section 42(b)(1), the probate court may be petitioned for a determination of the right to inherit based upon clear and convincing evidence that the purported father was the biological father of the child. *See* Tex.Prob.Code Ann. § 42(b)(1) (Vernon Supp.1993).

As an illegitimate child, Lee Jess unquestionably could have relied upon any of the five methods enumerated in section 42(b)(1) to show his right to inherit from his biological father. *See id.; Mills,* 665 S.W.2d at 155. The question to be determined, however, is whether appellees may rely upon any of these same five methods to establish their right to inherit from Lee Jess by proving he was the biological child respectively of their father and grandfather, Thomas Luke Pope.

■ In construing statutory provisions, it is necessary to ascertain and give effect to the intent of the legislature. *See Sandy Int'l, Ir . v. Hansel & Gretel Children's Shop, Inc.,* 775 S.W.2d 802, 805 (Tex.App.—Dallas 1989, no writ). Rules of statutory construction are tools that aid in determining legislative intent and should be utilized where the language of the statute creates doubt as to the intent of the legislature. *See Matrix, Inc. v. Provident Am. Ins. Co.,* 658 S.W.2d 665, 667 (Tex. App.—Dallas 1983, no writ). But where the language of the statute is plain and unambiguous, legislative intent should be determined from the language of the statute without resort to rules of construction. *See id.*

■ With these principles in mind, we first examine the fifth means of establishing inheritance rights under section 42(b)(1) to determine if it permits appellees to prove Thomas Luke Pope was Lee Jess's biological father. This method is set out in the second and third sentences of that section. The two pertinent sentences read as follows:

> A person claiming to be a biological child of the decedent, who is not otherwise presumed to be a child of the decedent, or claiming inheritance through a biological child of the decedent, who is not otherwise presumed to be a child of the decedent, may petition the probate court for a determination of right of inheritance. If the court finds by clear and convincing evidence that the purported father was the biological father of the child, the child is treated as any other child of the decedent for the purpose of inheritance and he and his issue may inherit from his paternal kindred, both descendants, ascendants, and collaterals in all degrees, and they may inherit from him and his issue.

TEX.PROB.CODE ANN. § 42(b)(1) (Vernon Supp.1993) (emphasis added). Added to section 42(b)(1) in 1987 by the legislature, this method specifically gives an illegitimate child or his direct descendants a means to establish inheritance rights. See Dickson v. Simpson, 781 S.W.2d 723, 724 n. 1 (Tex.App.—Austin 1989), rev'd on other grounds, 807 S.W.2d 726 (Tex.1991). Appellants contend appellees may not rely upon this particular method to establish their right to inherit from Lee Jess because they are neither Lee Jess's biological children nor his direct descendants.

It is clear from the second sentence of section 42(b)(1) that persons relying on this method must meet one of two requirements before they may petition the probate court for a determination of inheritance rights. They must either (1) be claiming to be biological children of the decedent, or (2) be claiming inheritance through a biological child of the decedent. Appellees purport to be Lee Jess's half-sisters and the surviving daughter of his deceased half-brother. They are not claiming to be Lee Jess's biological children, nor are they claiming inheritance through a biological child of his. As such, they do not fall within the class of persons entitled to petition the probate court for a determination of inheritance rights. Accordingly, we hold appellees are not entitled to establish inheritance rights in Lee Jess's estate under the fifth method provided for in the second and third sentences of section 42(b)(1).

■ We next examine the other four methods enumerated in the first sentence of section 42(b)(1) to determine if appellees may use any of these methods to establish inheritance rights. The applicable portion of the statute reads as follows:

> For the purpose of inheritance, a child is the child of his biological father if the child is born under circumstances described by Section 12.02, Family Code, is adjudicated to be the child of the father by court decree as provided by Chapter 13, Family Code, was adopted by his father, or if the father executed a statement of paternity as provided by Section 13.22, Family Code, or a like statement properly executed in another jurisdiction, so that he and his issue shall inherit from his father and from his paternal kindred, both descendants, ascendants, and collaterals in all degrees, and they may inherit from him and his issue.

TEX.PROB.CODE ANN. § 42(b)(1) (Vernon Supp.1993) (emphasis added). Appellants contend section 42(b)(1), when read in its entirety, requires appellees to be biological children of Lee Jess or be claiming inheritance through a biological child of Lee Jess in order to establish inheritance rights under any of these four methods. We disagree.

Unlike the fifth method provided for in section 42(b)(1), there are no restrictions on the class of persons entitled to establish inheritance rights under these other four methods. The statute does not require that a person be a biological child of the

decedent or be claiming inheritance through a biological child of the decedent to rely on one of these other methods. If the legislature intended to limit the application of these methods in such a manner, it could have done so with appropriate language. It did not do so.

Furthermore, it is clear from the latter portion of the first sentence of section 42(b)(1) that the legislature intended collateral relatives to inherit from an illegitimate child. Once the child is legitimated for inheritance purposes by any of the four methods, the statute allows the child and his issue to inherit from the father and from paternal kindred, both descendants, ascendants, and collaterals in all degrees, and the father and paternal kindred may inherit from the child and his issue. *See* TEX.PROB.CODE ANN. § 42(b)(1) (Vernon Supp.1993). This statute should be liberally construed to effectuate its purposes. *See Jones v. Davis,* 616 S.W.2d 276, 278 (Tex.Civ.App.—Houston [1st Dist.] 1981), *rev'd on other grounds,* 626 S.W.2d 303 (Tex.1982). We conclude it would defeat rather than effectuate the purposes of section 42(b)(1) to construe the first sentence of that section as granting collateral relatives the right to inherit from an illegitimate child but affording them no means to show they are entitled to this right. Therefore, we hold the first sentence of section 42(b)(1) provides paternal collateral relatives not only with the right to inherit from an illegitimate child but also four specific methods by which they may show themselves entitled to this right. We hold appellees are entitled to establish their right to inherit from Lee Jess under any of the four methods enumerated in the first sentence of section 42(b)(1) of the Texas Probate Code. Accordingly, the probate court did not err in permitting appellees to attempt to do so.

At the hearing appellees relied upon the first method described in section 42(b)(1) to establish their inheritance rights in Lee Jess's estate. Under this method an illegitimate child is the child of his biological father for inheritance purposes if a man is presumed to be his father under section 12.02 of the Texas Family Code. Section 12.02(a) in turn describes five circumstances in which a man will be presumed to be the biological father of a child. It is undisputed that only the presumption found in section 12.02(a)(5) is applicable in this case. Section 12.02(a)(5) states that a man is presumed to be the biological father of a child if, before the child reaches the age of majority, the man (1) receives the child into his home, and (2) openly holds out the child as his biological child. TEX.FAM. CODE ANN. § 12.02(a)(5) (Vernon Supp. 1993). The presumption of fatherhood is based upon a finding of both these facts. Appellants argue the probate court erred as a matter of law in determining Thomas Luke Pope was Lee Jess's biological father because there was little or no evidence Pope received Lee Jess into his home.

The probate court specifically found that Thomas Luke Pope openly held out Lee Jess as his biological child. Appellants do not challenge this finding of fact; consequently, it constitutes an undisputed fact binding on the parties. *See James Holmes Enters., Inc. v. John Bankston Constr. & Equip. Rental, Inc.,* 664 S.W.2d 832, 834 (Tex.App.—Beaumont 1983, writ ref'd n.r.e.) (op. on reh'g). Moreover, this finding is amply supported by the record and should be sustained. *See id.* At the hearing, Odell Mitchell testified Thomas Luke Pope would bring Lee Jess over to his house when he and Lee Jess were children so they could play together. He stated Pope told him Lee Jess was his son and that he heard Pope refer to Lee Jess as "my son" and "my boy." We conclude there is sufficient evidence in the record to support the probate court's finding that Thomas Luke Pope openly held out Lee Jess as his biological child before Lee Jess reached the age of majority.

The probate court, however, did not expressly find that Thomas Luke Pope received Lee Jess into his home. This fact also must exist to support the presumption

of paternity. Although appellants complain of the probate court's failure to make this finding, they neither objected to the probate court's failure nor requested this additional finding as required by rule 298 of the Texas Rules of Civil Procedure. *See* Tex.R.Civ.P. 298; *James Holmes,* 664 S.W.2d at 834. Since the probate court found the other factual element required by section 12.02(a)(5), the omitted and unrequested element will be presumed to be found by the probate court in support of its judgment if it is supported by the evidence. *See* Tex.R.Civ.P. 299; *Sorrell v. Elsey,* 748 S.W.2d 584, 587 (Tex.App.—San Antonio 1988, writ denied).

We conclude there is sufficient evidence to support the omitted and unrequested finding. Vivian Bush testified Lee Jess told her that he and his mother lived with Thomas Luke Pope until he was two years old, at which time Pope left and began living with his mother's first cousin, Edith Brown. Additionally, Odell Mitchell, a lifelong friend of Lee Jess, when asked where Lee Jess lived when he was a child, testified Lee Jess lived with his "mommie and daddy." Mitchell named Thomas Luke Pope as Lee Jess's "daddy." This evidence supports a presumed finding that Thomas Luke Pope received Lee Jess into his home before Lee Jess reached the age of majority.

We hold the probate court did not err as a matter of law in determining Thomas Luke Pope was Lee Jess's biological father. We overrule appellants' point of error and affirm the probate court's judgment.