**Patsy Ann ANDERTON, Appellant,**

v.

**ROCKWALL CENTRAL APPRAISAL DISTRICT and Appraisal Review Board of Rockwall County, Appellees,**

No. 05–99–01253–CV.

Court of Appeals of Texas, Dallas.

Aug. 22, 2000.

Scott D. Wylie, Corsicana, Sandra Griffin, Linebarger Heard Goggan, Blair Graham Pena & Samps, Austin, for Appellees.

Charles W. McGarry, Dallas, for Appellant.

Before Justices MORRIS, ROACH, and FITZGERALD.

## OPINION

Opinion By Justice MORRIS.

This is an ad valorem tax case. The sole issue presented concerns the time within which a property owner must seek to correct the appraised market value of agricultural property as reflected on a tax appraisal roll. Patsy Ann Anderton appeals from a summary judgment denying her request to change the appraised market value of her property on Rockwall County's annual tax appraisal rolls for the years 1992 through 1996. She requested the change under section 25.25(d) of the Texas Property Tax Code after a "rollback" tax was imposed that forced her to pay additional property taxes based on the market value of her property during those five years. The trial court denied Anderton's request due to her failure to file her section 25.25(d) motion before the date her annual property taxes for each of the five years would have become delinquent. Anderton argues her motion was within the time allowed by section 25.25(d) because it was filed before the date the rollback tax

would have become delinquent. We conclude that a motion under section 25.25(d) seeking to correct the appraised market value of agricultural land must be filed before the date the annual property taxes on the subject property become delinquent rather than the date a rollback tax imposed on the property becomes delinquent. Because of our conclusion, we will affirm the trial court's judgment.

## I.

In 1992, Patsy Ann Anderton purchased agricultural property in Rockwall County. As a result of the land's agricultural designation, it received special tax treatment by being taxed on its agricultural value rather than on its higher market value. *See* TEX. TAX CODE ANN. § 23.41 (Vernon Supp. 2000). On December 18, 1997, the Rockwall Central Appraisal District notified Anderton by letter that it had determined two tracts of her land were no longer being used for agricultural purposes. The appraisal district's determination caused an additional tax to be imposed on those tracts as provided by section 23.55 of the Texas Property Tax Code. *See id.* § 23.55. This additional tax, commonly called a rollback tax, was equal to the difference between the property taxes imposed on the land for each of the preceding five years and the amount of taxes that would have been imposed during those years if the land had been taxed on its market value instead of its agricultural value. *See id.* In essence, the assessment of a rollback tax was a penalty for taking the land out of agricultural production. The appraisal district's letter further stated the additional tax would become delinquent on February 1, 1998.

On January 29, 1998, Anderton filed with the Appraisal Review Board of Rockwall County a motion to correct the tax appraisal rolls for the preceding five years. The motion was filed pursuant to section 25.25(d) of the Texas Property Tax Code. In her motion, Anderton did not dispute that she was subject to a rollback tax for removing her property from agricultural use. Instead, she asserted the tax rolls for 1992 through 1996 contained inflated appraised market values for her property. As a result, Anderton contended, the amount of the rollback tax was excessive. In support of her motion, Anderton submitted an independent appraisal showing the fair market value of the tracts to be significantly lower than reflected on the appraisal rolls for the subject years. The review board denied the motion, and Anderton filed this suit to compel the review board to correct the rolls.

In response to Anderton's suit, the appraisal district and the review board filed a motion for summary judgment solely on the ground that Anderton's motion to correct the appraisal rolls was not filed within the time period specified by section 25.25(d). Anderton responded that her motion was timely. She also filed her own motion for summary judgment requesting the trial court to hold she was entitled to a correction of the appraisal rolls as a matter of law. The trial court denied Anderton's motion and granted the motion filed by the appraisal district and the review board. Anderton brought this appeal.

## II.

The issue presented focuses on the meaning of the word "taxes" as used in section 25.25(d) of the Texas Property Tax Code. A motion to correct a tax appraisal roll under section 25.25(d) may be filed "[a]t any time prior to the date the taxes become delinquent...." TEX. TAX CODE ANN. § 25.25(d) (Vernon Supp.2000). Anderton argues that the "taxes" in question here are the rollback taxes imposed on her property in 1997, which would not have become delinquent until February 1, 1998. Therefore, according to Anderton, her motion to correct the tax rolls filed on January 29, 1998 was timely. The appraisal district and review board respond that the deadline language in section 25.25(d) refers exclusively to the date the landowner's yearly property taxes become delinquent.

Based on their interpretation, the appraisal district and review board submitted summary judgment evidence showing that Anderton did not file a motion to correct the tax rolls before the date her property taxes for the years 1992 through 1996 would have become delinquent.

In construing statutory provisions, we must ascertain and give effect to the intent of the legislature. *Matherson v. Pope,* 852 S.W.2d 285, 288 (Tex.App.-Dallas 1993, writ denied). We consider the entire act, its nature and object, and the consequences following each construction. *Hollingsworth v. City of Dallas,* 931 S.W.2d 699, 702 (Tex.App.-Dallas 1996, writ denied). Statutes should be construed in a manner that avoids conflicts and gives each provision effect. *Id.* To determine the meaning of section 25.25(d), we must first place it in the context of the statutory scheme created to inform taxpayers of the appraised value of their property and to provide them with a system for challenging those appraisals.

In general, all taxable property is appraised at its market value as of January 1 each year. TEX. TAX CODE ANN. § 23.01(a) (Vernon Supp.2000). In the case of land designated for agricultural use, the yearly appraisal is based not on market value, but on the land's capacity to produce agricultural products. *Id.* § 23.41(a). Any notice of appraised value sent to an owner of agricultural land must include not only the property's appraised agricultural value, but its market value as well. *Id.* § 25.19.

Property owners have the right to protest the appraised value of their property under chapter 41 of the tax code. *Id.* § 41.41. Section 41.41(a)(1) specifies that owners of agricultural land may protest the determination of either the appraised agricultural value or market value of their property. *Id.* § 41.41(a)(1). A protest under section 41.41 must be filed no later than June 1 or the thirtieth day after the notice of appraised value is delivered to the property owner, whichever is later. *Id.* § 41.44(a)(1). Upon a showing of good cause, this deadline may be extended to the date the appraisal review board approves the appraisal record. *Id.* § 41.44(b). The appraisal record must be approved no later than July 20 of the tax year. *Id.* § 41.12.

If a property owner fails to meet the deadlines for a chapter 41 protest, she may still file a motion to correct certain types of errors in the appraisal roll under section 25.25 of the property tax code. *See id.* § 25.25. Section 25.25(d) allows property owners to file a motion "to correct an error that resulted in an incorrect appraised value for the owner's property." *Id.* § 25.25(d). To be entitled to such a correction, the property owner must show the error resulted in a valuation that exceeds the correct appraised value by more than one-third. *Id.* As stated above, the motion must be filed before the time the "taxes" on the property become delinquent. *Id.* If the appraisal roll is changed under section 25.25(d), the owner must pay to each affected taxing unit a late-correction penalty. *Id.*

Also, under section 25.25(c), a property owner is given up to five years to request that the appraisal review board change the appraisal roll to correct: (1) clerical errors; (2) multiple appraisals; or (3) the inclusion of property that does not exist in the form or at the location described in the appraisal roll. *Id.* § 25.25(c). As this Court has held, the purpose of section 25.25(c) is to allow late changes to otherwise finalized appraisal records only in situations where "the decision to make the change is based on an objective, factual determination and the payment of taxes based on the uncorrected records would be fundamentally unfair." *GE Capital Corp. v. Dallas Cent. Appraisal Dist.,* 971 S.W.2d 591, 593 (Tex.App.-Dallas 1998, no pet.).

A property owner's ability to change approved tax appraisal rolls is clearly limited. The structure of the appraisal protest process restricts the scope of chal-

lenges available to property owners based on the time within which they file their protest. Taxpayers who file their protest soon after receiving their notice of appraised value have the widest latitude regarding what may be challenged. In contrast, taxpayers who file a protest long after the appraisal rolls have been approved have limited options with respect to what may be changed. This structure prevents disruption and uncertainty in the tax rolls by setting deadlines after which property valuations become fixed. Anderton asks us to construe section 25.25(d) to allow her to challenge the substance of property valuations set years before she filed her motion. We conclude such a construction would be contrary to the legislature's intent regarding the scope of challenge available under section 25.25(d).

■ The legislature's intent, as may be determined from the overall tax appraisal protest scheme, is that the appraisal rolls become fixed after property owners have been given adequate time to file their protests. For substantive challenges to property appraisals, the legislature has determined that thirty days after receiving a notice of appraised value is normally sufficient time within which to file a protest. *See* TEX. TAX CODE ANN. § 41.44 (Vernon Supp.2000). Although agricultural land is taxed on its agricultural value, not its market value, owners are also informed of the appraised market value of their property in their notices of appraised value. *See id.* § 25.19. The notices, therefore, are sufficient to alert agricultural land owners to any error in their property's appraised market value that may need correction. Indeed, the code anticipates such appraisal challenges in section 41.41(a)(1), which specifies that owners of agricultural land may protest *either* the land's appraised agricultural value or its appraised market value. *See id.* § 41.41(a)(1). Even though they are not taxed on the market value of their land, owners of land put to agricultural use have the right to protest the appraised market value of their land im-

mediately upon receiving their notice of appraised value, long before any rollback tax may be imposed because of a change in use.

Section 25.25(d) extends the time to file a challenge to the appraised value of land for properties that have been significantly overvalued due to an error. *See id.* § 25.25(d). In general, the extension under 25.25(d) ends on February 1 of the year following the tax year, the date the yearly property taxes become delinquent. For owners of agricultural land who are assessed a rollback tax, Anderton's construction of section 25.25(d) would lengthen this extension by years. In effect, Anderton's construction of section 25.25(d) would allow a substantive challenge to the market value appraisal of agricultural land more than five years after the land was originally appraised. Only under section 25.25(c) may a five-year-old appraisal roll be challenged.

In enacting section 25.25(c) of the tax code, the legislature specifically set forth the limited corrections that may be made to an appraisal roll five years after the date the property values were determined. *Id.* § 25.25(c). These limited corrections include only objective and ministerial matters such as clerical errors. *See id.* They do not include the substantive reevaluation of a property's market value. *See id.* A claim under section 25.25(d) necessarily requires such a reevaluation. Anderton's construction of section 25.25(d) conflicts with the legislature's intent as evidenced in section 25.25(c) that challenges made long after the rolls have been approved be limited to corrections of only certain objective, factual matters. *See GE Capital,* 971 S.W.2d at 593.

■ There is nothing about the assessment of a rollback tax itself that creates a new reason upon which a property owner could rely to challenge the past appraised market value of agricultural land. A section 23.55 rollback tax is dependent solely upon an appraisal district's determination that the land is no longer being used for

**544**

agricultural purposes. *See id.* § 23.55. No new valuation of the property is made to set the amount of the rollback tax. *See id.* The tax amount is simply calculated based on the past market values set forth in the tax rolls. Notably, section 23.55 includes a provision that the landowner be informed of her "right to protest the determination." *Id.* § 23.55(e). The right to protest, as provided in section 23.55, refers only to the appraisal district's determination that the use of the land has changed. By limiting the landowner's protest rights under section 23.55 only to the determination that there has been a change of use, the legislature has indicated that the amount of the rollback tax itself is not subject to challenge.

Based on the foregoing, we conclude that the term "taxes" as used in section 25.25(d) refers only to the yearly property taxes. Accordingly, any motion made pursuant to section 25.25(d), including a motion to correct the appraised market value of agricultural property, must be filed before the date the yearly property taxes on the subject land become delinquent. The appraisal district and review board presented summary judgment evidence showing that Anderton did not file her protest to the 1992 through 1996 tax rolls before her property taxes for those years would have become delinquent. Accordingly, we affirm the trial court's summary judgment ordering that Anderton take nothing by her claims. Because of our disposition of this issue, it is unnecessary for us to address Anderton's second argument that the trial court erred in refusing to hold she was entitled to corrections in the appraisal rolls as a matter of law.