BENSON CHEVROLET, INC.; MG Building Materials; Fresquez Concessions of Texas d/b/a Baskin Robbins, Alamo City Microbrewery, and Quiznos; Global Shred, LLC; Salsalito Cantina, Inc.; Texas Enterprises, Inc. d/b/a Golden West Oil and Golden West Packaging Plant; Watts Law Firm; Diamond Back Construction Co., Inc; IBT, Inc.; Alamo Aircraft Supply, Inc.; Texas Tres Properties, LTD d/b/a Alamo Cycle Plex; Allen & Allen; Amarillo Aviation Technologies; RBLB Inc. d/b/a American & Import Auto Services; Ancira Nissan; Ancira–Winton Chevrolet, Inc.; B.D. Holt Company; Benson Motor Company of San Antonio, Inc.; Benson Nissan, Inc.; Best Western Sunset Station; Blue Line Corporation; Budget Electric Sign & Service Inc.; Budget Signs, LTD; Cato Electric Co., Inc.; Central Builders, Inc.; Chrysler Plymouth City, Inc./Ingram Park Chrysler Jeep Inc.; Davis TM Construction Co.; Aqua Vida, LTD d/b/a Domingo Vara Chevrolet; Ed Flume Building Specialties, LTD; Freightliner of SA, LTD; Gillespie Motor Company; Grande Ford Truck Sales, Inc.; Gun GP, LLC; H & S Champs Medical LTD; Holt Rental Services; JDSA I. LTD; Jasons Deli/JDSA, I., LTD; Kel–Lac Uniforms, Inc.; Ken Batchelor Cadillac Company, Inc.; Lone Star Bakery, Inc.; Mama Margies; Medallion, LTD; MG Building Materials–Millwk; Morettis Fine Jewelry, Inc.; Kahlig Enterprises, LTD d/b/a North Park Lexus of SA; North Park Lincoln Mercury, LTD; Ocular Surgery Center, P.A.; Sheldon P. Braverman, M.D., P.A. d/b/a the Optical Dispensary, Inc.; Sheldon P. Braverman, M.D., P.A.; Parrish & Co.,

Inc.; Porter Loring, Inc.; Randolph Brooks Federal Credit Union; Red McCombs Body Repair Center; Red McCombs Dodge; Red McCombs Hyundai; Red McCombs Isuzu; Red McCombs Superior; Red McCombs Toyota; SA Quality Fence LTD; Selectrucks of SA, Inc.; Southway Ford, Inc.; Stuart A. Terry, M.D., P.A.; United Shareholder Services/United Services Funds; Universal Toyota; DIAN International, Inc., predecessor in interest to Builders First Source South Texas, L.P.; Shoe Dawgs of San Antonio d/b/a New Balances of San Antonio; and SHNH, Inc., Appellants,

v.

BEXAR APPRAISAL DISTRICT,
Appellee.

No. 04–07–00204–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 15, 2007.

Rehearing Overruled Oct. 1, 2007.

**56**

Lorri Michel, Michel Law Firm, P.C., Austin, Thomas Michel, Griffith, Jay, Michel & Moore, L.L.P., Fort Worth, for appellants.

Sandra Griffin, Perdue, Brandon, Fielder, Collins & Mott, L.L.P., Austin, Elizabeth Conry Davidson, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

CATHERINE STONE, Justice.

This is an interlocutory appeal brought by property owners (the "Property Owners") from the grant of Bexar Appraisal District's ("the District") challenge to subject matter jurisdiction. To resolve this appeal, we must consider the scope of several Tax Code provisions, particularly sections 25.25, 41.41, and 42.25, which deal with the procedures set forth to challenge tax appraisal rolls. *See* TEX. TAX CODE ANN. §§ 25.25, 41.41, 42.25 (Vernon 2001 & Supp.2007). Specifically, we must consider whether a property owner who opts to file an administrative challenge under section 25.25(d) instead of section 41.41(a) may seek relief in district court under section 42.25 for an excessive appraisal. Because we answer this question in the affirmative, we conclude the trial court erred by granting the District's challenge to subject matter jurisdiction. Accordingly, we reverse the order of the trial court and remand for further proceedings.

### LEGAL & FACTUAL BACKGROUND

At the beginning of each year, appraisal districts, like the District, appraise the value of real and personal property located within the district's jurisdiction. After appraising the property, the appraisal districts issue notices of appraised value to property owners. *See id.* § 25.19 (Vernon Supp.2007). If no protest or challenge is filed by the property owner regarding the appraised value established by the appraisal district, the appraisal district certifies the value to the tax assessor-collector and the tax assessor-collector issues tax statements and collects taxes. *See id.* §§ 26.01, 31.01 (Vernon 2001 & Supp.2007).

When a property owner disagrees with an appraised value, he or she may challenge the valuation to the Appraisal Review Board ("ARB") pursuant to two provisions of the Tax Code: sections 41.41 and 25.25. Section 41.41(a) of the Tax Code allows a property owner to protest: (1) the appraised value of the owner's property; (2) the unequal appraisal of the owner's property; (3) the inclusion of the property on the appraisal records; (4) the denial to the property owner in whole or in part of a partial exemption; (5) the determination that the owner's land does not qualify for appraisal; (6) the identification of the taxing units in which the owner's property is taxable in the case of the appraisal district's appraisal roll; (7) the determination that the property owner is the owner of property; (8) a determination that a change in use has occurred; and (9) any

other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner. *Id.* § 41.41(a)(1)-(9). The property owner's challenge pursuant to section 41.41(a) must be filed within 30 days of receipt of notice of appraised value or by June 1. *Id.* § 41.44(a)(1) (Vernon Supp.2007).

If the property owner fails to meet the deadlines for a section 41.41 protest, he or she may still file a motion to correct certain types of errors in the appraisal roll under section 25.25 of the Tax Code. *Id.* § 25.25. Section 25.25(c) gives a property owner up to five years to request that the ARB change the appraisal roll to correct: (1) clerical errors; (2) multiple appraisals; or (3) the inclusion of property that does not exist in the form or at the location described in the appraisal roll. *Id.* at (c). Also, under section 25.25(d), a property owner may, at any time before the date the taxes on the property become delinquent, file a motion "to change the appraisal roll to correct an error that resulted in an incorrect appraised value for the owner's property." *Id.* at (d). The property owner, however, must show the error "resulted in an appraised value that exceeds by more than one-third the correct appraised value" to be entitled to relief under this subsection.[1]

Property owners who are dissatisfied with the outcome of their ARB proceeding may seek judicial review of the ARB's decision. Section 42.01 of the Tax Code expressly provides that a property owner is entitled to appeal to the district court both a Chapter 41 and a section 25.25 determination by the ARB. *Id.* § 42.01

(Vernon 2001). If a property owner's appeal to the district court concerns the appraisal district's excessive evaluation of his or her property, section 42.25 of the Tax Code authorizes the district court to remedy the excessive appraisal. Section 42.25 provides: "[i]f the court determines that the appraised value of property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised value determined by the court." *Id.* § 42.25 (Vernon 2001). Once a chapter 42 review is determined, the chief appraiser must correct the appraisal roll and other appropriate records to reflect the final determination, and the assessor for each taxing unit must, in turn, correct its tax roll. *Id.* § 42.41 (Vernon Supp.2007). Except as provided for in the provisions of section 25.25 and Chapters 41 and 42 of the Tax Code, the appraisal roll may not be changed. *Id.* § 25.25(a).

Turning to the instant case, the facts are generally undisputed. The Property Owners are various owners of personal property located in Bexar County, Texas. In May 2003, the District issued notices of appraised value to the Property Owners advising them of the determined appraised value of each of their properties and the associated tax due. The Property Owners did not protest the appraisal values published in the District's notices. In July 2003, the District approved and certified the appraisal roll, and the tax assessor-collector issued tax statements to the Property Owners in October 2003. The Property Owners paid their 2003 property taxes shortly thereafter.

---

1. *Id.* If the appraisal roll is changed pursuant to section 25.25(d), the property owner must pay a 10% late correction penalty. Tex. Tax Code Ann. § 25.25(d). Also, if the property owner has a section 41.41 protest adjudi-

cated by the appraisal district, he or she is precluded from later seeking relief under section 25.25(d). *See id.*; *Jim Sowell Constr. Co. v. Dallas Cent. Appraisal Dist.*, 900 S.W.2d 82, 85 (Tex.App.-Dallas 1995, writ denied).

The District subsequently sent letters to the Property Owners advising them of a recent "amnesty" amendment to the Tax Code, which would allow them to submit tangible personal property for taxation that was previously omitted from the appraisal roll without retroactive taxation.[2] Upon receipt of the District's letters, the Property Owners filed amnesty renditions with the appraisal district. After receiving the Property Owners' renditions, the District determined its original 2003 appraisal values did not include the value of personal property disclosed in the amnesty renditions. The District later prepared supplemental appraisal records and issued new 2003 appraisal notices to the Property Owners, which reflected increased property appraisals due to the District's consideration of the previously omitted property. The Property Owners paid their taxes upon receiving the District's appraisal notices and allowed the deadline to pass to file protests of their appraised value under section 41.41(a) of the Tax Code.

After the deadline for filing a section 41.41(a) protest had passed, the Property Owners filed challenges relating to the District's reappraisals under section 25.25(d) of the Tax Code.[3] The Property Owners claimed the appraisal district erroneously considered their amnesty renditions and encouraged the District to correct the appraisal roll since the appraisal district's error resulted in incorrect appraised values that exceeded by more than one-third the correct appraised values of the properties. The District denied each of the Property Owners' challenges.

The Property Owners filed suit against the District after it denied their challenges, seeking relief under section 42.25 of the Tax Code for the appraisal district's excessive reappraisals of their properties. The Property Owners' pleadings state: ("the [Property Owners] allege as a matter of law the reappraisals of their property constitute excessive appraisals pursuant to section 42.25 of Tax Code. Specifically, the [Property Owners] allege the Defendant excessively appraised the[ir] propert[ies] (by at least one-third) in the following amounts over and above the original certified 2003 appraised value[s]...."). The District responded by filing a document titled "Motion to Partially Dismiss for Lack of Jurisdiction," requesting the court to dismiss the Property Owners' section 42.25 excessive appraisal claims because such claims were not properly raised before the District.[4]

According to the District, the Property Owners were required to file a timely protest with the appraisal district under section 41.41(a) of the Tax Code in order to

---

2. The letters concerned a now expired provision of the Tax Code, section 22.23(c), which the Legislature amended in an effort to encourage property owners to submit tangible personal property for taxation that had been previously omitted from the appraisal rolls. *See* Tex. Tax Code Ann. § 22.23(c) (Vernon Supp.2007); *MAG–T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 622 (Tex.App.-Austin 2005, pet. denied). The chief appraiser generally has the authority to assess back-taxes for personal property omitted from the appraisal roll in either of the two preceding years. *See* Tex. Tax Code Ann. § 25.21 (Vernon 2001); *MAG–T*, 161 S.W.3d at 622. "However, under the section 22.23(c) amendment, if

taxpayers rendered their property by the December 1, 2003 deadline, they were granted 'amnesty,' which means that their previously omitted property would be exempt from retroactive taxation for the 2001 and 2002 tax years." *MAG–T*, 161 S.W.3d at 622–23.

3. Some of the property owners also filed motions pursuant to section 25.25(c) of the Tax Code, alleging their properties were the subject of a multiple appraisal.

4. It is undisputed that the District's "Motion to Partially Dismiss for Lack of Jurisdiction" was in reality a plea to the jurisdiction.

pursue an excessive appraisal claim under section 42.25 in the district court. The District argued the trial court thus lacked subject matter jurisdiction over the Property Owners' section 42.25 claims because the Property Owners opted to pursue relief under section 25.25(d) instead of protesting the District's reappraisals under section 41.41(a). The trial court agreed with the District and granted the appraisal district's challenge to subject matter jurisdiction, concluding that "all allegations of excessive appraisal pursuant to [section] 42.25 ... of the Tax Code are dismissed for failure to timely protest for all the [Property Owners] and accounts involved." This appeal followed.

## Standard of Review

An interlocutory appeal is available when a trial court grants or denies a governmental unit's challenge to subject matter jurisdiction, irrespective of the underlying procedural vehicle used in obtaining the ruling. *See Thomas v. Long*, 207 S.W.3d 334, 339 (Tex.2006); *see also* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon Supp.2007). Whether a trial court has subject matter jurisdiction is a question of law subject to *de novo* review. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). The plaintiff bears the burden of pleading facts that show the district court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). In reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings in favor of the pleader and look to the pleader's intent. *Id.*

## Discussion

As we are called upon to interpret what the parties agree are the con-

trolling provisions of the Tax Code, we begin by reviewing the relevant principles of statutory construction. The primary objective of statutory construction is to give effect to legislative intent. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). "Unless a statute is ambiguous, we discern that intent from the language of the statute itself." *Cont'l Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex.2002). Further, we are to consider a statute as a whole, not its provisions in isolation. *Id.* We presume the Legislature intended a just and reasonable result in enacting a statute. Tex. Gov't Code Ann. § 311.021(3) (Vernon 2005).

The District contends a property owner must file a section 41.41(a) administrative challenge in order to pursue an excessive appraisal claim in the district court under section 42.25 of the Tax Code. In other words, the District believes that a property owner who opts instead to file a section 25.25(d) administrative challenge forfeits his or her right to seek relief in the district court for an excessive appraisal under section 42.25. The Property Owners respond that the District's argument is at odds with the language of sections 25.25, 41.41, and 42.25 of the Tax Code. The Property Owners argue that to follow the District's interpretation would defeat the Legislature's intent to allow a section 42.25 excessive appraisal challenge whenever a property owner has timely filed an administrative claim of excessive appraisal.

Turning to the statutory provisions at issue, the plain language of sections 25.25 and 41.41 indicates that a property owner's ability to change a tax appraisal roll is limited. Property owners who file a protest under section 41.41 soon after receiving their notice of appraised value have the widest latitude regarding what may be challenged. *See* Tex. Tax Code Ann. § 41.41(a)(1)-(9). They may raise several

different challenges, *see id.,* including an excessive appraisal challenge. *See id.* at (a)(1). By contrast, property owners who wait until after the deadlines for filing a section 41.41 protest to file a challenge under section 25.25 are more limited with respect to what may be challenged. *See id.* § 25.25(c), (d). The purpose of section 25.25(c) "is to allow late changes to otherwise finalized appraisal records only in situations where 'the decision to make the change is based on an objective, factual determination and the payment of taxes based on the uncorrected records would be fundamentally unfair[,]'" *see Anderton v. Rockwall Cent. Appraisal Dist.,* 26 S.W.3d 539, 542 (Tex.App.-Dallas 2000, pet. denied), whereas "[s]ection 25.25(d) extends the time to file a challenge to the appraised value of land for properties that have been significantly overvalued due to an error." *Id.* at 543. Although sections 41.41 and 25.25 may limit a property owner's ability to challenge an appraisal roll, it is clear from the language of these provisions that both authorize a property owner to raise an excessive appraisal claim administratively with the appraisal district. *See* Tex. Tax Code Ann. §§ 25.25(d); 41.41(a)(1).

Given the fact that the Property Owners timely filed section 25.25(d) challenges with the District claiming their properties were at least one-third over-appraised as a result of an error by the appraisal district, we must decide whether a property owner raising an excessive appraisal challenge under section 25.25(d) instead of section 41.41(a) may seek judicial relief in the district court under section 42.25.[5] Section 42.25 provides: "[i]f the court determines

that the appraised value of property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised value determined by the court." *Id.* § 42.25. No language within this statutory provision limits its application to only section 41.41(a) excessive appraisal challenges. *See id.* Because no such limitation exists within section 42.25, we see no reason why property owners filing administrative challenges under section 25.25(d) are precluded from seeking relief under section 42.25 in district court. An excessive appraisal challenge brought under section 25.25(d) must, by the express terms of the statute, allege the appraisal district over-valued a property by more than one-third. *See id.* § 25.25(d). It logically follows that section 42.25 applies on judicial review of such administrative challenge since section 42.25 explicitly authorizes the court to remedy an excessive valuation by an appraisal district.

CONCLUSION

The plain language of sections 25.25, 41.41, and 42.25 does not support the District's contention that only those property owners who file administrative protests under section 41.41(a) may seek relief under section 42.25 in the district court. We therefore hold the trial court had subject matter jurisdiction over the Property Owners' section 42.25 claims, and conclude the trial court erred by granting the District's jurisdictional challenge. Accordingly, the order of the trial court is reversed, and the

---

5. The record reflects that the District acknowledged the Property Owners' 25.25(d) motions constituted excessive appraisal challenges. When the District issued its orders on the Property Owners' motions, the District stated: "After reviewing the notice[s] of Pro-

test and after hearing the testimony and evidence presented, the Board has made a determination with a quorum present as to the following issues: 1/3 OVER VALUED (25.25D)."

cause is remanded to the trial court for further proceedings.