# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00424-CV

**Claudia Rizzo and Samuel Rizzo, Appellants**

**v.**

**Gonzalo Ancira, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 433RD JUDICIAL DISTRICT
### NO. C2008-1378D, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Claudia and Samuel Rizzo bought a 20-acre piece of property in Comal County from Gonzalo Ancira. After the Comal Appraisal District assessed rollback taxes on the property, the Rizzos brought claims for violations of the Texas Deceptive Trade Practices Act (DTPA), statutory fraud under the business and commerce code, fraud by non-disclosure, negligence and gross negligence, and breach of contract against Ancira. After a bench trial, the trial court entered judgment in favor of Ancira. On appeal, the Rizzos challenge the trial court's judgment on the breach-of-contract claim. We affirm the judgment of the trial court.

## BACKGROUND

In 2001, Barbara Ancira[1] sold a 20-acre piece of property in Comal County to her father, Gonzalo Ancira.[2] At the time of the sale, the property was designated as qualified open-space land due to its agricultural use. *See* Tex. Tax Code Ann. § 23.51(1) (West Supp. 2009) (defining "qualified open space land" as "land that is currently devoted principally to agricultural use"). The property benefited from tax exemptions that accompany such a special-use valuation. *See id.* § 23.55 (West 2008). According to Barbara Ancira, the property maintained its special-use valuation "from the time I met my ex-husband back in 1997 all the way up to the present." She explained that the 20-acre property had originally been part of a larger property that she and her ex-husband owned, and that cows had grazed on the entire property before the sale of the 20 acres to her father in 2001 and continued to do so after the sale of the property. She also testified that she did not know of her father ever reapplying for a special-use valuation after the sale, and that she continued to pay the property taxes on the 20-acre property after the 2001 sale.[3]

Dora Campos, a geographical-information-system technician with the Comal Appraisal District, testified that a change in ownership of property generally results in reassessment of the value of the property, and the new owner must reapply for a special-use valuation of the property. However, Campos testified that no reassessment of the property was done after the

---

[1] Barbara Ancira sold the property with her then-husband, and her married name at that time was Wagner. At the time of trial, her married name was Ruebenson, but she testified that professionally she goes by "Barbara Ancira."

[2] For purposes of clarity, only appellee Gonzalo Ancira will be referred as "Ancira" in this opinion. Ancira's daughters, Barbara Ancira and Lisa Ancira, will be referred to by their full names.

[3] The facts recited herein are taken from the testimony and exhibits admitted at trial.

2001 sale of the 20-acre property because the transfer was not properly recorded.  Accordingly, the property continued to be taxed as if it had a special-use valuation even though no new application was filed by Ancira, the new owner.  Instead, the previous exemption remained in Barbara Ancira's name.

In July 2007, Lisa Ancira, another of Gonzalo Ancira's daughters, went to speak to Campos at the Comal Appraisal District offices.  Ancira himself was also on the phone with Campos during part of the conversation.  Lisa Ancira told Campos that the 20-acre property was no longer being used for agricultural purposes.  Campos passed this information along to a land appraiser, though no notices of reappraisal of the land were sent to the Anciras at that time.[4]  Barbara Ancira, however, testified Lisa Ancira had no personal knowledge of the use of the land at the time of her conversation with Campos, having not visited the property since 2002.

In November 2007, Claudia and Samuel Rizzo bought the 20-acre property from Gonzalo Ancira.  Samuel Rizzo testified that the land's open-space valuation, which he learned of from the real estate agent handling the property, was a primary selling point.  Rizzo indicated that he had no reason to believe that the property did not retain its open-space valuation through closing, though he also testified that he never saw cattle grazing on the land during his visits to the property.  Rizzo also stated that, as far as he could tell, all taxes had been paid as assessed at the time of the closing in November 2007.

---

[4] Campos also testified that her position as geographical-information-system technician does not involve appraising land or evaluating special-use valuations, and stated that she was "not too familiar with the proceedings of the ag[riculture] valuation."

3

The contract of sale for the property included a provision entitled ROLLBACK TAXES[5] in paragraph 13(B), which reads:

> If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Seller's change in use of the Property prior to closing or denial of a special use valuation on the Property claimed by Seller results in Assessments for periods prior to closing, the Assessments will be the obligation of seller. Obligations imposed by this paragraph will survive closing.

Campos testified that, in December 2007, the Comal Appraisal District mailed notices of appraisal of the property, with notices regarding the years 2002 to 2006 going to Ancira, and a notice regarding 2007 going to the Rizzos. The notices assessed the taxes on the property based on market value, which according to Campos indicated that the land was no longer considered to have maintained its special-use valuation for the years 2002 to 2007. When asked whether the "triggering event" for the sending of the notices was the report by Lisa Ancira that the land was no longer being used for agricultural purposes, Campos replied, "No, sir. The triggering mechanism there would have been the transfer of the ownership." Campos also testified that the notices of appraisal could have been protested until January 17, 2008. The record does not indicate that any protests were filed.

Samuel Rizzo testified that he did not protest the 2007 notice of appraisal on the property when he received it because he did not think it applied to him. However, when Rizzo went to pay the taxes on the property in January 2008, Campos told him that he owed more than $19,000

---

[5] A "rollback tax" is a tax assessed following a change in use of land, and is calculated by determining the difference between the property taxes actually imposed on the land for each of the preceding years in question and the amount of taxes that would have been imposed during those years if the land had been taxed on its market value instead of its agricultural value. *Anderton v. Rockwall Cent. Appraisal Dist.*, 26 S.W.3d 539, 541 (Tex. App.—Dallas 2000, pet. denied) (citing Tex. Tax Code Ann. § 23.55 (West 2008)).

in rollback taxes. While the Rizzos were ultimately able to obtain a special-use valuation on the property for 2008, they were unable to secure such a valuation for the years 2002 to 2007. After receiving a notice of intent to file a lawsuit due to the unpaid taxes from the appraisal district, the Rizzos paid the rollback taxes for 2002 to 2007 in the amount of $19,439.18.

The Rizzos brought suit against Ancira based on several claims, including breach of contract. After a bench trial, the trial court entered judgment in favor of Ancira. This appeal followed.

## DISCUSSION

The Rizzos present two issues on appeal. In the first, they argue that, under the tax code, the sale of land cannot trigger the imposition of rollback taxes, and therefore "the only plausible explanation for the imposition of the rollback taxes is that Appellee changed the use of the Property prior to the date he sold the property to Appellants." In their second issue on appeal, the Rizzos argue that, since the taxes could only have been triggered by Ancira's change in use of the property, payment of the rollback taxes is Ancira's responsibility under the contract.[6]

---

[6] We note that there is some question as to whether the Rizzos' briefing properly places their issues before this Court. Under the rules of appellate procedure, an appellant's brief "must state concisely all issues or points presented for review" and "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 39.1(f), (i). An issue is sufficiently presented for review only "if it directs the reviewing court's attention to the error about which the complaint was made." *See Canton-Carter v. Baylor College of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (concluding that arguments on appeal did not "direct[] the reviewing court's attention to the error about which the complaint is made" because issues on appeal "do not point out any error allegedly committed by the trial court"). Here, while the Rizzos state that they "challenge the Trial Court's ruling that the sale of the Property triggered the assessment of the rollback taxes," they do not indicate whether they base their challenge on principles of evidentiary sufficiency or on some legal error by the trial court, nor do they present any standard for reviewing the trial court's actions. *See id.* (noting lack of legal analysis and specification of standard of review in concluding that appellant's argument was

5

In this case, the Rizzos had the burden to show by a preponderance of the evidence that Ancira breached the contract by failing to pay the rollback taxes assessed by the Comal Appraisal District. *See James M. Clifton, Inc. v. Premillenium, Ltd.*, 229 S.W.3d 857, 859 (Tex. App.—Dallas 2007, no pet.) (reciting elements of breach of contract claim). Paragraph 13(B) of the contract delineates responsibility for rollback taxes, indicating that Ancira, as the seller, was responsible for taxes resulting from the "Seller's change in use of the Property prior to closing" or "denial of a special use valuation on the Property claimed by Seller."

On appeal, the Rizzos only address the portion of paragraph 13(B) relating to the "Seller's change in use of the Property." In their two issues, the Rizzos state that, under the tax code, rollback taxes can only be assessed if the use of the property was changed for the period of time in question. *See* Tex. Tax Code § 23.55. Based on this statute, the Rizzos argue that the rollback taxes must have been assessed due to Ancira's change in use of the property, as they were assessed for years during which Ancira owned the land. This argument, however, rests on a faulty premise. The fact that the tax code lays out the proper procedures for a certain task does not guarantee that the procedures were followed in any given case. Accordingly, the fact that the tax code indicates that rollback taxes should only be assessed due to a change in use of property does not compel the conclusion that, in this case, the taxes were assessed for that reason. The Rizzos' arguments on appeal consequently lack merit.

Further, the evidence admitted at trial does not otherwise establish that the rollback taxes were assessed due to Ancira's change in use of the property. The Rizzos presented evidence

inadequately briefed). In the interests of justice, however, we address the merits of the Rizzos' arguments.

to the trial court that Lisa Ancira told Campos, a representative of the Comal Appraisal District, that the land was no longer being used for agricultural purposes prior to the assessment of the rollback taxes. Campos passed this information along to a land appraiser, after which the land was reappraised and rollback taxes were assessed. The Rizzos argue that this evidence shows that the rollback taxes were assessed due to Ancira's change in use of the property. However, Ancira presented evidence that the rollback taxes were assessed only after the sale of the property to the Rizzos. Further, Barbara Ancira testified that the property had been used for agricultural purposes from 1997 until the sale of the property to the Rizzos, and that Lisa Ancira had no personal knowledge regarding the use of the land after 2002. A reasonable finder of fact could resolve this conflicting evidence to conclude that the rollback taxes were assessed due to something other than Ancira's change in use of the property, and therefore that the Rizzos failed to carry their burden to prove that Ancira breached the contract. Accordingly, we find no grounds on which to reverse the trial court's judgment.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:  July 29, 2010

7