**Reversed and Dismissed and Plurality and Dissenting Opinions filed October 13, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00894-CV

---

### HARRIS COUNTY APPRAISAL DISTRICT, Appellant

### V.

### IQ LIFE SCIENCES CORPORATION, Appellee

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2018-03250**

---

### PLURALITY OPINION

Appellee IQ Life Sciences Corporation filed a suit for judicial review against appellant, Harris County Appraisal District (HCAD), in district court after the Appraisal Review Board dismissed IQ Life Sciences's section 25.25(d) motion for correction of its property taxes and section 41.411 protest of its property taxes for tax years 2013 through 2015. *See* Tex. Tax Code Ann. §§ 25.25(d), 41.411. HCAD filed a plea to the jurisdiction arguing that the trial court did not have

subject-matter jurisdiction because IQ Life Sciences did not timely file either the motion for correction or protest. The trial court denied HCAD's plea. Because we conclude that the trial court does not have subject-matter jurisdiction over IQ Life Sciences's claims, we reverse the trial court's denial of HCAD's plea and dismiss IQ Life Sciences's claims for lack of subject-matter jurisdiction.[1]

## BACKGROUND

It is undisputed that IQ Life Sciences owned business personal property in Harris County on January 1 of each tax year at issue in this case, 2013, 2014, and 2015. It is also undisputed that IQ Life Sciences did not protest the appraised value of the business personal property for any of the tax years at issue prior to February 1 of each year after the tax year. According to IQ Life Sciences, it did not file protests because it did not receive notices of the appraised value from HCAD for the tax years at issue. IQ Life Sciences did, however, pay the exact amount shown on its property tax bills before the February 1 delinquency date for each tax year at issue. IQ Life Sciences paid the 2013 taxes on January 21, 2014, the 2014 taxes on January 28, 2015, and the 2015 taxes on December 31, 2015 and January 20, 2016.[2] As demonstrated by its own records, IQ Life Sciences therefore had actual notice of the amount of business property taxes it owed for each tax year at issue in this appeal. Even though IQ Life Sciences had actual knowledge of those taxes, and paid the exact amount of taxes shown on its tax bill prior to the delinquency date during each year at issue in this appeal, it did not protest or otherwise complain about the appraisal or assessment of its property at the time of each payment.

---

[1] Justice Spain concurs in the judgment only.

[2] Each year IQ Life Sciences made two separate tax payments, one to Harris County and the second to Cypress Fairbanks Independent School District. The 2015 payments were made on two different dates.

IQ Life Sciences instead waited until August 11, 2017 to file a motion for correction asserting that the appraised value of its personal property for the years 2013, 2014, and 2015, exceeded by more than one-third the correct appraised value. *See* Tex. Tax Code Ann. § 25.25(d) (allowing motions for correction of value in limited circumstances). IQ Life Sciences also filed on that same day protests under section 41.411 asserting that HCAD had failed to send during 2013, 2014, and 2015, the notice of appraised value called for by section 25.19 of the Property Tax Code. *See id.* at §§ 25.19 (requiring chief appraiser to send notice of appraised value to property owners and specifying contents of the notice), 41.411(a) ("A property owner is entitled to protest before the appraisal review board the failure of the chief appraiser or the appraisal review board to provide or deliver any notice to which the property owner is entitled."). The Harris County Appraisal Review Board (ARB) determined that it had no jurisdiction to grant any of the relief requested by IQ Life Sciences and it dismissed IQ Life Sciences's motion and protests.

IQ Life Sciences then filed suit asking the district court to order HCAD (1) to correct the 2013, 2014, and 2015 appraised values of its personal property pursuant to section 25.25(d) of the Property Tax Code and (2) to provide IQ Life Sciences with notices of appraisal for the tax years at issue and provide a hearing regarding IQ Life Sciences's protest of those appraised values. HCAD filed a plea to the jurisdiction arguing the trial court did not have subject-matter jurisdiction over IQ Life Sciences's suit because IQ Life Sciences did not timely exhaust its administrative remedies as required by the Property Tax Code. The trial court denied the plea.

HCAD filed a motion for reconsideration. In response, IQ Life Sciences argued that because it had timely paid all taxes for the tax years at issue, no taxes

3

ever became delinquent. As a result of its timely payment, IQ Life Sciences asserted there was no deadline for it to file a lack-of-notice protest for those years. IQ Life Sciences argued in the alternative that section 41.44(c-3) of the Property Tax Code extended the deadline to file a lack-of-notice protest because it never received a tax bill from any taxing unit for any of the three years at issue. *See* Tex. Tax Code Ann. § 41.44(c-3) (providing for a hearing for a property owner who files a section 41.411 protest on or after the date the taxes on the property become delinquent but before the 125th day after the property owner "claims to have first received written notice of the taxes in question . . . solely on the issue of whether one or more taxing units timely delivered a tax bill"). The trial court denied HCAD's motion for reconsideration. HCAD then filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

**ANALYSIS**

HCAD raises three issues on appeal, all challenging the trial court's denial of its plea to the jurisdiction. While we ultimately address the arguments raised in each of HCAD's issues, we approach them from the perspective of IQ Life Sciences two claims raised in its suit below.

## I. Standard of review and applicable law

HCAD's issues all challenge whether the trial court had subject-matter jurisdiction to consider IQ Life Sciences's claims. The existence of subject-matter jurisdiction is a question of law that can be challenged by a plea to the jurisdiction. *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We review a trial court's ruling on a plea de novo. *See Miranda,* 133 S.W.3d at 226, 228; *Woodway Drive LLC v. Harris Cty. Appraisal Dist.*, 311 S.W.3d 649, 651 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues. *See Miranda*, 133 S.W.3d at 227. The movant, in this case HCAD, must meet the summary-judgment standard of proof by conclusively demonstrating that the trial court lacks subject-matter jurisdiction. *See id.* at 227–28. We credit as true all evidence favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Id.* at 228. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court may not grant the plea, and the fact issue will be resolved at trial by the factfinder. *Id.* at 227–28. If relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea as a matter of law. *Id.* at 228.

This appeal presents questions of statutory construction, which we also review de novo. *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). When construing statutes, our primary objective is to give effect to the legislature's intent. *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 38 (Tex. 2018). We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Id.* We presume that the legislature intended the entire statute to be effective. *Vitol, Inc. v. Harris Cty. Appraisal Dist.*, 529 S.W.3d 159, 171 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We also presume that the legislature chose a statute's language with care, intentionally including each word chosen, and omitting words purposefully. *Id.*, at 168. Another fundamental principle of statutory construction is that when construing a statute, a reviewing court must consider the act as a whole and not just as single phrases, clauses, or sentences.

*Fredericksburg Care Co. v. Perez*, 461 S.W.3d 513, 520 (Tex. 2015). We must give effect to each provision of a statute so that none is rendered meaningless or mere surplusage. *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016). Therefore, when construing the provisions of the Property Tax Code at issue in this appeal, we must consider how each "provision fits within the narrow framework of the tax-appraisal protest scheme and within the broader scope of the Property Tax Code as a whole." *Willacy Cty. Appraisal Dist.*, 555 S.W.3d at 39.

The overall purpose of the Property Tax Code is to assure "the orderly collection of revenue so that the functions of government should not be dependent upon the outcome of a multitude of lawsuits," while also ensuring that property owners have been given adequate time to file their protests. *See Valero Transmission Co. v. Hays Consol. Indep. Sch. Dist.*, 704 S.W.2d 857, 859, n.1 (Tex. App.—Austin 1985, writ ref'd n.r.e.) (examining purpose behind newly enacted Property Tax Code); *see also Willacy Cty. Appraisal Dist.*, 555 S.W.3d at 40 (citing *Anderton v. Rockwall Cent. Appraisal Dist.*, 26 S.W.3d 539, 543 (Tex. App.—Dallas 2000, pet. denied)). To fulfill this purpose, the Property Tax Code provides detailed administrative procedures which are exclusive for anyone wanting to contest their property taxes. *See* Tex. Tax Code § 41.41 (providing right of protest by a property owner); *Vitol, Inc.*, 529 S.W.3d at 166; *Appraisal Review Bd. Of Harris Cty. Appraisal Dist. v. O'Connor & Assocs.*, 267 S.W.3d 413, 419 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The administrative-review process is intended to resolve most tax protests at the administrative level, relieving the burden on the court system in the process. *Harris Cty. Appraisal Dist. v. ETC Mktg.*, 399 S.W.3d 364, 367 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Therefore, property owners generally must exhaust their administrative remedies before they can seek judicial review. *Vitol, Inc.*, 529

6

S.W.3d at 166. A property owner may file a petition for review in district court against the appraisal district to appeal an order by an appraisal review board determining an owner's protest. Tex. Tax Code Ann. §§ 42.01, 42.21; *Eastland Cty. Appraisal Dist. v. Peninsula Pipelines (N. Tex.), LLC*, 594 S.W.3d 383, 385 (Tex. App.—Eastland 2019, no pet.) (stating that "a district court has subject-matter jurisdiction over a property owner's timely filed petition for review from an ARB order."); *Munn v. Smith Cty. Appraisal Dist.*, 584 S.W.3d 501, 503 (Tex. App.—Tyler 2018, pet. denied) ("After an administrative hearing, dissatisfied taxpayers are authorized to appeal to the district court."); *United Airlines, Inc. v. Harris Cty. Appraisal Dist.*, 513 S.W.3d 185, 189 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (stating that "invocation of the trial court's jurisdiction over an appeal is a subject covered by sections 42.01 and 42.21" of the Tax Code). As a result, "a taxpayer's failure to pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes." *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (internal quotation marks omitted); *see Gregg Cty. Appraisal Dist. v. Laidlaw Waste Sys., Inc.*, 907 S.W.2d 12, 16 (Tex. App.—Tyler 1995, writ denied) (stating that Property Tax Code "provisions creating rights and remedies are mandatory and exclusive and must be complied with in all respects"); *cf. United Airlines, Inc.*, 513 S.W.3d at 188 (stating petition filed in compliance with sections 42.01 and 42.21 is "sufficient to vest the trial court with jurisdiction").

The legislature has provided two direct avenues by which an appraisal roll may be substantively changed, chapter 41 of the Property Tax Code and section 25.25(d) of the Property Tax Code. *Willacy Cty. Appraisal Dist.*, 555 S.W.3d at 40, n.5. Section 41.41 outlines eight actions that may be protested by a property owner to an appraisal review board, including "determination of the appraised

value of the owner's property." *Id.* § 41.41(a)(1). In addition, subsection (a)(9) authorizes a general protest of "any other action of the chief appraiser [or] appraisal district . . . that applies to and adversely affects the property owner." *Id.* § 41.41(a)(9). "[T]o take advantage of this option, generally, a property owner must file a written notice of protest within thirty days after the owner receives a notice of the appraised value of the property." *Bauer-Pileco, Inc. v. Harris Cty. Appraisal Dist.*, 443 S.W.3d 304, 310 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see* Tex. Tax Code Ann. § 41.44(a). A property owner may, however, protest the failure of the chief appraiser to provide or deliver any notice to which the property owner is entitled. *See id.* at § 41.411. If the property owner establishes that the notice was not provided or delivered, the appraisal review board must determine the protest made by the property owner. *Rio Valley, LLC v. City of El Paso*, 441 S.W.3d 482, 488 (Tex. App.—El Paso 2014, no pet.) (citing Tex. Tax Code Ann. § 41.411(b)). The Property Tax Code also establishes the deadline by which a lack of notice protest must be filed. It provides that

> a property owner who files a protest under Section 41.411 on or after the date the taxes on the property to which the notice applies become delinquent, but not later than the 125th day after the property owner, in the protest filed, claims to have first received written notice of the taxes in question, is entitled to a hearing solely on the issue of whether one or more taxing units timely delivered a tax bill. If at the hearing the appraisal review board determines that all of the taxing units failed to timely deliver a tax bill, the board shall determine the date on which at least one taxing unit first delivered written notice of the taxes in question, and for the purposes of this section the delinquency date is postponed to the 125th day after that date.

Tex. Tax Code Ann. § 41.44(c-3).

The second direct avenue is found in section 25.25(d) of the Property Tax Code. Section 25.25(d) allows property owners to file a motion "to correct an error that resulted in an incorrect appraised value for the owner's property."

8

*Anderton*, 26 S.W.3d at 542 (quoting Tex. Tax Code Ann. § 25.25(d)). For a property owner to be eligible for this correction, it must show that the error resulted in a valuation that exceeds the correct appraised value by more than one-third. *Id.* Section 25.25(d) extends the time to file a challenge to the appraised value until February 1 of the year following the tax year, the date the yearly property taxes become delinquent. *Id.* at 543. If the appraisal roll is changed under section 25.25(d), the property owner must pay each affected taxing unit a late-correction penalty. *Id.* at 542. As the Dallas Court of Appeals observed:

> A property owner's ability to change approved tax appraisal rolls is clearly limited. The structure of the appraisal protest process restricts the scope of challenges available to property owners based on the time within which they file their protest. Taxpayers who file their protest soon after receiving their notice of appraised value have the widest latitude regarding what may be challenged. In contrast, taxpayers who file a protest long after the appraisal rolls have been approved have limited options with respect to what may be changed. This structure prevents disruption and uncertainty in the tax rolls by setting deadlines after which property valuations become fixed.

*Id.* at 542–43.

## II.     The trial court erred when it denied HCAD's plea to the jurisdiction on IQ Life Sciences's section 25.25(d) motion for correction.

IQ Life Sciences filed a motion for correction pursuant to section 25.25(d) on August 11, 2017. IQ Life Sciences filed the motion one-and-a-half years after the February 1, 2016 delinquency date for 2015 tax payments, and an even longer time period after the delinquency dates for the 2013 and 2014 tax payments. IQ Life Sciences argued in the trial court below, and again on appeal, that there was no deadline for it to file its section 25.25(d) motion for correction because it timely paid the taxes owed each year and therefore they never became delinquent.

The Dallas Court of Appeals has addressed a case with similar issues. *Id.* at

9

540–44. In *Anderton*, the landowner lost the agricultural exemption on two tracts of land. *Id.* at 541. The appraisal district notified the landowner that she owed an additional amount of taxes equal to the difference between the agricultural appraised value of the land and what the appraised value would have been without the agricultural exemption for the previous five years. *Id.* The appraised value did not change from what it had been determined to be during each of the relevant years, all that changed was the applicability of the agricultural exemption. *Id.* at 541–42. The appraisal district also notified the landowner of a delinquency date for the payment of those taxes. *Id.* Before that deadline, the landowner filed a section 25.25(d) motion to correct the appraised market values of the two tracts for each of the five years in dispute. *Id.* The appraisal review board rejected her motion, as did the trial court when the landowner filed suit. *Id.* On appeal, the landowner argued that because the motion for correction was filed before the delinquency date set by the appraisal review board, it was timely even though she sought to correct tax appraisals more than five years old. The Dallas Court of Appeals rejected the landowner's argument, holding that "any motion made pursuant to section 25.25(d) . . . must be filed before the date the yearly taxes on the subject land become delinquent." *Id.* at 544. It reached this conclusion even though there were no delinquent taxes at the time the landowner filed its motion.

We conclude that construing section 25.25(d) so that it allows motions for substantive corrections to property taxes to be filed years, even decades, after the appraisal rolls have become fixed would lead to absurd results and is directly contrary to the legislature's intent regarding the scope of challenges available to property owners under the Property Tax Code. *See Anderton*, 26 S.W.3d at 543 (rejecting similar argument in appeal involving motion for correction of the market value appraisal of agricultural land more than five years after land was originally

10

appraised). This is especially true here when the record establishes that IQ Life Sciences had actual notice of the amount of taxes owed in time to file a section 25.25(d) motion for correction before the February 1 delinquency date. *See* Tex. Tax Code Ann. § 31.02 (stating that "taxes are due on receipt of the tax bill and are delinquent if not paid before February 1 of the year following the year in which imposed"); s*ee Willacy Cty. Appraisal Dist.*, 555 S.W.3d at 43–44 (stating that the "failure to send or receive the tax bill . . . does not affect the validity of the tax, penalty, or interest, the due date, the existence of a tax lien, or any procedure instituted to collect a tax" and that the "failure to receive notice of appraised value as required by the Property Tax Code does not affect the property owner's obligation to pay the tax based on that appraised value.") (internal quotation marks omitted); *City of El Paso v. Mountain Vista Builders, Inc.*, 557 S.W.3d 617, 622 (Tex. App.—El Paso 2017, no pet.) (stating that property owner alleging lack of notice must still follow available administrative remedies); *Anderton*, 26 S.W.3d at 543 ("In general, the extension under 25.25(d) ends on February 1 of the year following the tax year, the date the yearly property taxes become delinquent."). We therefore reject IQ Life Sciences's argument and hold that because IQ Life Sciences's motion for correction was filed long after the February 1 delinquency date for each of the three tax years at issue, it was untimely. *See Anderton*, 26 S.W.3d at 543 ("We conclude such a construction would be contrary to the legislature's intent regarding the scope of challenge available under section 25.25(d).").

Section 25.25(c) also supports this conclusion. *See* Tex. Tax Code Ann. § 25.25(c). In *Anderton*, the Dallas Court of Appeals concluded that section 25.25(c) illuminates the limited nature of the tax appraisal challenges authorized by section 25.25(d). *Anderton*, 26 S.W.3d at 543. It stated

11

In enacting section 25.25(c) of the tax code, the legislature specifically set forth the limited corrections that may be made to an appraisal roll five years after the date the property values were determined. These limited corrections include only objective and ministerial matters such as clerical errors. They do not include the substantive reevaluation of a property's market value. A claim under section 25.25(d) necessarily requires such a reevaluation. Anderton's construction of section 25.25(d) conflicts with the legislature's intent as evidenced in section 25.25(c) that challenges made long after the rolls have been approved be limited to corrections of only certain objective, factual matters.

*Id.* (Internal citations omitted). Like Anderton, IQ Life Sciences's construction of section 25.25(d) conflicts with the legislature's intent. As a result, we hold that the trial court did not have jurisdiction over IQ Life Sciences's claim and it erred when it denied HCAD's plea to the jurisdiction. *O'Connor & Assocs.*, 267 S.W.3d at 419.

### III. The trial court erred when it denied HCAD's plea to the jurisdiction on IQ Life Sciences's section 41.411 lack of notice protest.

IQ Life Sciences alleged in the trial court that it did not receive the notices of appraised value for its personal property for the 2013, 2014, and 2015 tax years. It asked the trial court to order HCAD to provide it with the respective notices of appraised value and to then hold a hearing on IQ Life Sciences's protest relating to those appraised values. HCAD responded with its plea to the jurisdiction arguing IQ Life Sciences's protest pursuant to section 41.411 was untimely. In response, IQ Life Sciences argued that there was no deadline to file its protest because it never received the appraisal notices. IQ Life Sciences then pointed out section 41.44(c-3), quoted above, and argued that the statutory provision supported its interpretation of the statute because the condition precedent to the creation of a deadline to protest, receipt of the appraisal notices, never occurred. The trial court apparently agreed with IQ Life Sciences's argument because it denied HCAD's

12

plea.

On appeal, HCAD argues the trial court erred when it denied its plea on IQ Life Sciences's section 41.411 appraisal protest because IQ Life Sciences filed its protest long after any applicable statutory deadline. HCAD argues that pursuant to section 41.44(c), IQ Life Sciences was required to file its protest by February 1 of the year after each tax year at issue. *See* Tex. Tax Code Ann. § 41.44(c) (providing that property owner is entitled to a hearing and determination of appraisal protest if the property owner files the notice prior to the date the taxes on the property to which the notice applies become delinquent). HCAD also argues that IQ Life Sciences did not comply with the deadline found in section 41.44(c-3). This section extends the deadline to file a lack of notice protest to the 125th day after the property owner receives written notice of the taxes in question. *See id.* § 41.44(c-3).

IQ Life Sciences responds that the trial court did not err when it denied HCAD's plea because it timely filed its notice of protest under section 41.411. IQ Life Sciences argues that the notice of protest was timely under section 41.44(c) because (1) that section requires a property owner to file a protest "prior to the date the taxes on the property to which the notice applies become delinquent" and (2) it timely paid the taxes for each year at issue, therefore the taxes never became delinquent. *See* Tex. Tax Code Ann. § 41.44(c) Next, IQ Life Sciences asserts that the protest was timely under section 41.44(c-3) because it never received written notice of the taxes due therefore no deadline applied for it file a section 41.411 protest.

Because the evidence conclusively demonstrates that IQ Life Sciences had actual notice of the amount of taxes owed before the February 1 delinquency date for each tax year at issue here, it could not stand by and do nothing at that time,

13

and then years later choose to file a protest of the appraised value of its taxable personal property. We therefore hold that IQ Life Sciences filed its section 41.411 protest too late, whether measured by section 41.44(c) or section 41.44(c-3). *See City of El Paso*, 557 S.W.3d at 619, 623 (holding that when property owner learned about taxes from property owner's bank, that knowledge triggered the 125-day deadline to file a lack of notice protest); *ABT Galveston Ltd. P'ship v. Galveston Cent. Appraisal Dist.*, 137 S.W.3d 146, 154, 157–58 (Tex. App.— Houston [1st Dist.] 2004, no pet.) (holding that when property owner had actual notice of taxes and paid them by delinquency date, alleged lack of notice did not excuse exhaustion of remedies).

To reach this conclusion we necessarily reject IQ Life Sciences's argument that there was no deadline for it to file its section 41.411 protest because it paid its taxes before they had "become delinquent." Such a construction would defeat the overarching purpose of the Property Tax Code. *See Valero Transmission Co.*, 704 S.W.2d at 859, n.1 (stating that purpose of the Property Tax Code is "the orderly collection of revenue so that the functions of government should not be dependent upon the outcome of a multitude of lawsuits," while also ensuring that property owners have been given adequate time to file their protests). We instead conclude that the section 41.44(c) and section 41.44(c-3) language at issue here describes the general delinquency date as established in section 31.02. *See* Tex. Tax Code Ann. § 31.02 (stating that "taxes are due on receipt of the tax bill and are delinquent if not paid before February 1 of the year following the year in which imposed."); *Willacy Cty. Appraisal Dist.*, 555 S.W.3d at 44 (stating that the "failure to send or receive the tax bill . . . does not affect the validity of the tax, penalty, or interest, the due date, the existence of a tax lien, or any procedure instituted to collect a tax" and that the "failure to receive notice of appraised value as required by the

14

Property Tax Code does not affect the property owner's obligation to pay the tax based on that appraised value.") (internal quotation marks omitted); *Harris Cty. Appraisal Dist. v. Dincans*, 882 S.W.2d 75, 78 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("In view of the plethora of cases placing the burden on the property owner to pursue an administrative remedy in a timely manner, we cannot accept appellee's argument that would permit a property owner to do nothing when confronted with an obviously erroneous tax bill. To interpret sections 23.54 and 25.19 in such a manner would defeat the entire scheme the tax code sets out for protesting and appealing actions of the appraisal board."). As a result, the ARB correctly dismissed IQ Life Sciences's protest and the trial court did not have subject matter jurisdiction over IQ Life Sciences's lawsuit, and it should have granted HCAD's plea to the jurisdiction.

Further, this decision does not violate IQ Life Sciences's right to due process. In tax cases such as this, "due process is satisfied if the taxpayer is given an opportunity to be heard before an assessment board at some stage of the proceedings." *Vitol, Inc.*, 529 S.W.3d at 176, n.12; *see City of Houston v. Parkinson*, 419 S.W.2d 900, 904 (Tex. App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.) (in a case involving assessments against property owners for the cost of street paving, the court stated that "due process is satisfied if the parties complaining had actual notice"). Here, IQ Life Sciences had actual notice of the taxes owed each year in time to file a protest. Therefore, it had the opportunity to be heard on the issue of its property taxes for that particular year.[3] The fact it chose not to act upon that knowledge at the time does not mean that its due-process

---

[3] To the extent IQ Life Sciences argues HCAD waived its challenge to the trial court's subject-matter jurisdiction over this lawsuit by including a request for disclosure in its original answer, we disagree. (BR24) *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) (stating that a court's subject-matter jurisdiction "cannot be conferred upon any court by consent or waiver").

rights were violated.

## CONCLUSION

Because we conclude that the trial court erred when it did not grant HCAD's plea to the jurisdiction on both IQ Life Sciences's section 25.25(d) motion for correction and section 41.411 protest, we sustain HCAD's issues, reverse the trial court's order denying HCAD's plea to the jurisdiction on those claims, and dismiss them for lack of subject-matter jurisdiction.

/s/     Jerry Zimmerer
         Justice

Panel consists of Justices Zimmerer, Spain, and Hassan (Hassan, J. dissenting, Spain, J. concurring in judgment only without opinion).