

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00487-CV

———————————————

KAMY INVESTMENTS, LLC; KAMY TRUST; KOZAMESA INC.; RERAM INC.; AMY J. SADEGHIAN OF KAMY REAL PROPERTY TRUST; KHOSROW SADEGHIAN; AND ZACHARY SADEGHIAN OF KAMY REAL PROPERTY TRUST, Appellants

V.

DENTON COUNTY APPRAISAL REVIEW BOARD, Appellee

---

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court No. 23-8324-362

---

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

Appellants Kamy Investments, LLC; Kamy Trust; Kozamesa Inc.; Reram Inc.; Amy J. Sadeghian of Kamy Real Property Trust; Khosrow Sadeghian; and Zachary Sadeghian of Kamy Real Property Trust appeal from the trial court's order granting the plea to the jurisdiction filed by Appellee Denton County Appraisal Review Board (DCARB). Appellants argue in a single issue that the trial court erred by granting DCARB's plea to the jurisdiction because DCARB's failure to honor the terms of the parties' settlement agreement—in which DCARB had agreed to "grant an ARB protest hearing on each of [the] properties where [the] value was set without an ARB determination of protest[,] i.e., where the notice value was set based on [Appellants' representative's] failure to appear for his scheduled hearing"—constituted a waiver of governmental immunity. Because Appellants have failed to affirmatively demonstrate the trial court's subject-matter jurisdiction by alleging a valid waiver of immunity, we affirm the trial court's order granting DCARB's plea to the jurisdiction.

## II. Statutory Background

An understanding of the various phases of the Tax Code's administrative process is required before setting forth the dispute at issue. We therefore begin with an overview of that process and the remedies available to taxpayers.

As recently explained by the Texas Supreme Court,

"The Tax Code establishes a detailed set of procedures that property owners must abide by to contest the imposition of property taxes." *Morris v. [Hous. ISD]*, 388 S.W.3d 310, 313 (Tex. 2012). Under Section 42.09 of the [c]ode, those "administrative procedures are 'exclusive' and most defenses are barred if not raised therein." *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006). As a result, a taxpayer's failure to exhaust the Tax Code's exclusive administrative remedies "deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes." *Id.*

In general, the chief appraiser of each county appraisal district is responsible for preparing appraisal records listing all property that is taxable in the district and stating the appraised value of each. Tex. Tax Code [Ann.] § 25.01. . . . The chief appraiser "submit[s] the completed appraisal records to the appraisal review board [(ARB)] for review and determination of protests," *id.* § 25.22(a), which are addressed in Chapters 41 and 42 of the [c]ode.

*See Oncor Elec. Delivery Co. NTU, LLC v. Wilbarger Cnty. Appraisal Dist.*, Nos. 23-0138, 23-0145, 2024 WL 3075706, at *1–2 (Tex. June 21, 2024) (footnote omitted).[1]

A recent decision from the Austin Court of Appeals explains how taxpayers can appeal ARB decisions:

A property owner must first bring his complaint against an appraisal district to its ARB by way of a protest or a motion. *See* Tex. Tax Code [Ann.] §§ 25.25, 41.41. If the appraisal district and the property owner cannot resolve the protest or motion by agreement, the ARB is required to schedule a hearing at which the property owner is entitled to offer evidence or argument. *See id.* §§ 41.445, 41.45.[2] At the conclusion of

---

[1]Because the Texas Supreme Court handed down several opinions interpreting relevant provisions of the Tax Code after the parties had submitted their briefs, we gave the parties an opportunity to file letter briefs addressing the newly issued opinions. Only DCARB filed a letter brief.

[2]If a property owner is denied a protest hearing, the remedy is found in Section 41.45(f):

the hearing, the ARB is required to determine the protest and make its decision by written order. *Id.* § 41.47(a). In counties like Bastrop,[3] with a population of less than four million, the final order must be issued and delivered to the property owner no later than the thirtieth day after the date the hearing on the protest is concluded. *Id.* § 41.47(d), (f).[4]

Once a property owner receives notice of the ARB's order, the property owner can appeal the substance of that decision in the following ways: by filing an appeal in district court, *id.* § 42.01; by appealing certain orders to an arbitrator, *id.* § 41A.01; or by appealing certain other orders to the State Office of Administrative Hearings, *see* Tex. Gov't Code [Ann.] §§ 2003.901–.914. To challenge the procedures used by the ARB in determining their protest, property owners may request limited binding arbitration. *See* Tex. Tax Code [Ann.] § 41A.015. This avenue applies only to certain procedural complaints and may not be used to consider the substance of a decision. *See id.*

---

A property owner who has been denied a hearing to which the property owner is entitled under this chapter may bring suit against the appraisal review board by filing a petition or application in district court to compel the board to provide the hearing. If the property owner is entitled to the hearing, the court shall order the hearing to be held and may award court costs and reasonable attorney fees to the property owner.

Tex. Tax Code Ann. § 41.45(f).

[3]The same is true for Denton County, which also has a population of less than four million. *See* United States Census Bureau, https://www.census.gov/quickfacts/fact/table/dentoncountytexas,US/PST045223 (last visited on July 22, 2024) (showing that Denton County had an estimated population of approximately one million as of July 1, 2023). *See generally* Tex. R. Evid. 201.

[4]As further noted by the Austin Court of Appeals, "[t]he statute makes no exception for ARBs to delay issuing their orders because a request for limited binding arbitration is pending or arbitration is ongoing"; "*only if* the limited binding arbitration is successful will the order be rescinded and a new hearing held." *Johnson v. Bastrop Cent. Appraisal Dist.*, Nos. 03-23-00354-CV, 03-23-00404-CV, 2024 WL 3073766, at *5 (Tex. App.—Austin June 21, 2024, no pet. h.) (mem. op.) (citing Tex. Tax Code Ann. §§ 41A.015(j)(2)(B), 41.47(d), (f)).

4

*Johnson*, 2024 WL 3073766, at *5.

If, however, the ARB dismisses a protest because the property owner or the owner's agent fails to appear, the Tax Code provides relief in certain circumstances. For instance, Section 41.45(e–1) states,

> A property owner or a person designated by the property owner as the owner's agent to represent the owner at the hearing who fails to appear at the hearing is entitled to a new hearing if the property owner or the owner's agent files, not later than the fourth day after the date the hearing occurred, a written statement with the appraisal review board showing good cause for the failure to appear and requesting a new hearing.

Tex. Tax Code Ann. § 41.45(e–1).

Section 42.01 provides an additional remedy when an appraisal review board concludes that a taxpayer's failure to follow the Tax Code's procedures deprives the board of jurisdiction:

> (a) A property owner is entitled to appeal:

> > (1) an order of the appraisal review board determining:

> > > . . . .

> > > (E) that the appraisal review board lacks jurisdiction to finally determine a protest by the property owner under Subchapter C, Chapter 41, or a motion filed by the property owner under Section 25.25 because the property owner failed to comply with a requirement of Subchapter C, Chapter 41, or Section 25.25, as applicable . . . .

> > . . . .

> (c) A property owner who establishes that the appraisal review board had jurisdiction to issue a final determination of the protest by the

property owner under Subchapter C, Chapter 41, or of the motion filed by the property owner under Section 25.25 in an appeal under Subsection (a)(1)(E) of this section is entitled to a final determination by the court of the protest under Subchapter C, Chapter 41, or of the motion filed under Section 25.25. A final determination of a protest under Subchapter C, Chapter 41, by the court under this subsection may be on any ground of protest authorized by this title applicable to the property that is the subject of the protest, regardless of whether the property owner included the ground in the property owner's notice of protest.

*Id.* § 42.01(a)(1)(E), (c).

And Section 42.231 provides for a possible remand to cure the failure to exhaust administrative remedies as follows:

(a) This section applies only to an appeal by a property owner of an order of the appraisal review board determining:

(1) a protest by the property owner as provided by Subchapter C, Chapter 41; or

(2) a motion filed by the property owner under Section 25.25.[5]

---

[5]Under Section 25.25(d), which is mentioned by Appellants,

[a]t any time prior to the date the taxes become delinquent, a property owner . . . may file a motion with the appraisal review board to change the appraisal roll to correct an error that resulted in an incorrect appraised value for the owner's property. However, the error may not be corrected unless it resulted in an appraised value that exceeds by more than:

(1) one-fourth the correct appraised value, in the case of property that qualifies as the owner's residence homestead under Section 11.13; or

(2) one-third the correct appraised value, in the case of property that does not qualify as the owner's residence homestead under Section 11.13.

(b) Subject to the provisions of this section and notwithstanding any other law, if a plea to the jurisdiction is filed in the appeal on the basis that the property owner failed to exhaust the property owner's administrative remedies, the court may, in lieu of dismissing the appeal for lack of jurisdiction, remand the action to the appraisal review board with instructions to allow the property owner an opportunity to cure the property owner's failure to exhaust administrative remedies.

*Id.* § 42.231(a)–(b). But as noted by the Texarkana Court of Appeals, "Because [appellant's] protest was dismissed, rather than determined, Section 42.231 does not apply." *Holcim (US) Inc. v. Ellis Cnty. Appraisal Dist.*, 642 S.W.3d 840, 847 (Tex. App.—Texarkana 2021, no pet.). Appellants in this case acknowledge that their protests were dismissed.

---

Tex. Tax Code Ann. § 25.25(d). As explained by the Texas Supreme Court,

Section 25.25 "allows corrections after the time to protest has expired and appraisal rolls have been approved," but "[s]uch corrections can be made only under limited circumstances." *Id.* For example, subsection (d) authorizes motions "to change the appraisal roll to correct an error that resulted in an incorrect appraised value for the owner's property" under certain conditions, which can be brought before the taxes become delinquent. Tex. Tax Code [Ann.] § 25.25(d).

*See Oncor Elec. Delivery*, 2024 WL 3075706, at *2. Thus, a hearing on a Section 25.25(d) motion is limited in scope and can only correct certain valuation errors.

### III. Factual and Procedural Background[6]

Appellants are the owners of numerous properties located in Denton County, Texas. Appellants filed for a review of the 2022 appraised property-tax values on approximately 300 properties, and original protest hearings on the properties were scheduled before DCARB. Appellants contend that "[t]here was a discrepancy with scheduling the hearings on the properties" and that the hearings were dismissed. Appellants later stated that their "representative at the time of the hearings for the 2022 tax year had to urgently leave the hearings due to medical complications"; Appellants' representative thus failed to appear for the hearings.

After Appellants' representative failed to appear for the protest hearings, Appellants filed a series of requests for limited binding arbitration against DCARB under Tax Code Section 41A.015. In an effort to avoid lengthy and costly arbitration, DCARB agreed to grant another protest hearing if Appellants would "notify the comptroller and previously appointed arbitrators that the remainder of his limited

---

[6]Even after we requested that Appellants file an amended brief with a statement of facts that included record references, Appellants filed an amended brief that, although possibly compliant with the letter of the law as set forth in Rule 38.1(g), still fails to comply with the spirit of the law; the amended brief reflects citations to the entirety of multi-page documents instead of pinpoint cites to the record. *See* Tex. R. App. P. 38.1(g); *Bolling v. Farmers Branch ISD*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.) (noting that brief was not supported by "direct references to the record that are precise in locating the fact asserted"). Based on such inaccurate references, DCARB requests that we completely disregard Appellants' statement of facts. We need not grant that request as we use the parties' statement of facts to gain a cursory understanding of the case but rely on the record for preparing our own summary for the factual background section of this opinion.

binding arbitration proceedings [were] withdrawn." DCARB's attorney sent Appellants' attorney a letter on January 7, 2023,[7] memorializing this agreement:

> Confirming our agreement from yesterday, [DCARB] will grant an ARB protest hearing on each of [the] properties where [the] value was set without an ARB determination of protest[,] i.e., where the notice value was set based on your client's failure to appear for his scheduled hearing.
>
> The ARB will not agree to hold a rehearing on any property where [the] value was previously set at the conclusion of an ARB hearing on that property. That would be a matter for arbitration or a district[-] court proceeding and would not be the proper grounds for limited binding arbitration under the Texas Property Tax Code.
>
> In consideration for granting the hearing, your client would be required to notify the comptroller and previously appointed arbitrators that the remainder of his limited binding arbitration proceedings are withdrawn.
>
> This agreement would apply to all properties included in the following cause numbers (assigned by the comptroller) pursuant to the Limited Binding Arbitration requests filed by your client: [list of cause numbers omitted].

This letter is referred to by the parties as the agreement.

After executing the agreement, Appellants apparently proceeded on their request for limited binding arbitration. Limited Binding Arbitration Determinations found in favor of DCARB on many of the properties and determined that there was no violation. Approximately eight months later, requests for arbitration on two of the remaining case numbers were dismissed based on Appellants' failure to comply with the procedural requirements of Section 41A.015. Specifically, the letter to DCARB's

---

[7]Although the letter is dated January 7, 2022, this appears to be a typographical error as the signatures are dated in January 2023.

chairman from the arbitration team, Property Tax Assistance Division of the Texas Comptroller of Public Accounts, states that "[t]he property owner did not deliver notice to the appraisal review board chairman, the chief appraiser[,] and the appraisal district's taxpayer liaison officer by certified mail pursuant to Tax Code Section 41A.015(b)(1)."

The following month (September 2023), Appellants filed suit alleging a breach-of-contract action; requesting a temporary restraining order and a temporary injunction to enjoin DCARB from, among other things, conducting any Section 25.25(d) hearings regarding their properties' values; and seeking a declaratory judgment that the parties' settlement agreement is valid and that DCARB had breached it. Appellants also requested that the trial court render a judgment setting aside any foreclosure sale that might have occurred.

DCARB filed a combined original answer (generally denying the allegations and asserting the affirmative defenses of estoppel and governmental immunity) and plea to the jurisdiction. With regard to the affirmative defense of estoppel, DCARB pleaded that Appellants had failed to perform the stated consideration for the agreement because they had failed to notify the comptroller and previously appointed arbitrators that the remaining limited binding arbitration proceedings were withdrawn; instead, Appellants proceeded with limited binding arbitration. DCARB alleged that because Appellants could no longer perform under the agreement, estoppel prevented Appellants from asserting a breach-of-contract claim against DCARB.

10

With regard to its affirmative defense of governmental immunity, DCARB alleged that as a political subdivision of the State, it is immune from the present actions for breach of contract and for relief under the Declaratory Judgment Act (DJA) because governmental immunity bars actions against the State and its political divisions absent a legislative waiver. DCARB further stated that Appellants' pleadings did not state sufficient facts or legal provisions entitling them to relief under the DJA or for breach of contract; thus, there is no waiver of DCARB's sovereign immunity for those claims. DCARB duplicated this argument under the plea-to-the-jurisdiction heading in its answer.

One month after DCARB filed its answer, it filed a separate document reurging its plea to the jurisdiction. DCARB argued that "[n]otwithstanding [Appellants'] repudiation and violation of the agreement, the doctrine of governmental immunity bars [Appellants] from [their] claim[] for breach of contract, relief under the DJA,[8] and request for injunctive relief" because "[u]nder Texas law, there is no legislative waiver of immunity" for Appellants' pleaded claims.

Appellants filed a response to DCARB's plea to the jurisdiction, setting forth a different version of the background events than that contained in their original petition. According to Appellants,

---

[8]Because Appellants have not briefed any arguments related to their DJA claims, they have implicitly abandoned such claims on appeal. *See Matzen v. McLane*, 659 S.W.3d 381, 395 (Tex. 2021) (stating that court of appeals correctly ruled that appellant's "debtor's prison" claim was abandoned on appeal because it was not briefed).

- they were not informed of the dismissals of the protests by DCARB via letter and proceeded to limited binding arbitration pursuant to Tax Code Section 41A.015;

- Appellants and DCARB entered into an agreement, wherein Appellants' protest hearings that were dismissed due to Appellants' nonappearance would be reinstated and heard as regular hearings, not Section 25.25(d) hearings;

- Appellants' agent communicated with the taxpayer liaison at DCARB on or about January 11, 2023, stating that they had received the agreement and that instead of Section 25.25(d) hearings, the hearings would be classified as regular hearings on the accounts that were designated as "No Show";

- On or about February 3, 2023, the taxpayer liaison and ARB coordinator reached out to Appellants' agent stating that the properties would be heard as Section 25.25(d) hearings and not as regular hearings;

- On or about February 4, 2023, Appellants' agent reached out to the taxpayer liaison and ARB coordinator stating that they thought the hearings for the "2525d account" would be cancelled and that the no-show accounts would be reheard per the agreement; and

- In response to Appellants' February 4 communication, the taxpayer liaison and ARB coordinator emailed Zachary Sadeghian that she had been

12

informed that the agreement was not valid because Austin Campbell (Appellants' attorney) was not authorized to sign it.

Appellants stated that as a result, they "had to continue" with the limited binding arbitrations due to DCARB's alleged breach of the contract. Appellants contended that regardless of DCARB's breach, Appellants dismissed "a lot" of their limited binding arbitration matters but that DCARB had refused to honor the agreement and had continued to proceed with Appellants' hearings as Section 25.25(d) late hearings. But Appellants never explained why they did not invoke any of the remedies provided by the Tax Code but instead waited months after they knew of a claimed breach of the agreement to file a suit that ignored the Tax Code's remedy provisions.

Appellants argued that "[t]he Local Government Contract Claims Act waives immunity from contract suits for local governmental entities" and that because DCARB entered into a contract with Appellants, governmental immunity "[was] thus removed." Appellants further argued that they could appeal a decision from DCARB pursuant to Section 41.45(f), which (as set forth above) provides a remedy when a property owner has been denied a protest hearing.

DCARB filed a reply arguing that the Local Government Contract Claims Act provides a waiver for contracts for "goods and services" and is thus inapplicable to the parties' underlying agreement. DCARB further argued that Section 41.45(f) does not apply to Appellants' breach-of-contract claim because it applies only when a property owner has been denied a hearing on a protest, "not when there are alleged

13

procedural violations"[9] or when a property owner has failed to appear at its original hearing.[10] DCARB also noted that Appellants did not assert in their petition a cause of action under Section 41.45(f) and that any such cause of action would be untimely.

The trial court held a short hearing on DCARB's plea to the jurisdiction. At the conclusion of the hearing, the trial court stated,

> I will find that there was an original hearing date set and that any right to another hearing through contract, even if there was one, when they didn't comply and repudiated the contract, it loses it there. So I think under the facts[,] the plea to the jurisdiction is valid, and I am going to grant the plea to the jurisdiction.[11]

The trial court signed an order granting DCARB's plea to the jurisdiction without specifying the reason. Appellants then perfected this appeal.

---

[9]Attached to DCARB's plea to the jurisdiction is a letter dated September 13, 2022, from Campbell to the chief appraiser and the ARB Chairman or ARB personnel of Denton Central Appraisal District stating, "Please find this written notice as required by Tax Code Section 41A.015 and Comptroller Rules relating to [b]inding [a]rbitration. This letter is to inform the latters [sic] that both sides failed to comply with procedurals [sic]"; it then lists various sections of the Tax Code.

[10]Attached to DCARB's plea to the jurisdiction is the affidavit of the taxpayer liaison and ARB coordinator. According to affiant, Appellants' 2022 tax protest hearings were originally scheduled for July 1, 2022, and were rescheduled at Appellants' request (though it is unclear what ground was asserted to accomplish the rescheduling) for July 12, 2022; July 18–20, 2022; and August 15–18, 2022. The affiant stated that "[t]he records show that [Appellants] either appeared at the hearing and received an order determining [the] protest or did not appear at those hearings in-person or by affidavit."

[11]Contrary to Appellants' assertion that the trial court concluded that DCARB lacked authority to enter the contract, the record does not reflect such a finding.

14

## IV. Discussion

In their sole issue, Appellants argue that the trial court erred by granting DCARB's plea to the jurisdiction because DCARB waived governmental immunity when it entered into a settlement agreement with Appellants and when it breached the settlement agreement's terms. Appellants, however, have not pointed to any authority waiving DCARB's governmental immunity. None of the panoply of arguments that Appellants raise offer a viable legal argument that there is a waiver of DCARB's governmental immunity.

### A. Standard of Review and Applicable Law

We have previously set forth the standard of review that we apply when reviewing a plea to the jurisdiction:

> A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject[-]matter jurisdiction. *Harris* [*Cnty.*] *v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A plea to the jurisdiction may be utilized to challenge whether a plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case or to challenge the existence of jurisdictional facts. *Mission Consol.* [*ISD*] *v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Whether a trial court has subject[-]matter jurisdiction, whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject[-]matter jurisdiction, and whether undisputed evidence of jurisdictional facts establishes a trial court's subject[-]matter jurisdiction are questions of law that we review de novo. *City of Westworth Vill. v. City of White Settlement*, 558 S.W.3d 232, 239 (Tex. App.—Fort Worth 2018, pet. denied) (citing [*Tex. Dep't of Parks & Wildlife v.*] *Miranda*, 133 S.W.3d [217,] 226[ (Tex. 2004)]).
>
> When a plea to the jurisdiction challenges the pleadings[,] . . . we determine if the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (citing *Miranda*, 133 S.W.3d at

15

226). In making that determination, we liberally construe the pleadings in the plaintiff's favor, taking all factual assertions as true, and looking to the plaintiff's intent. *Id.* (citing *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015)). Even under that liberal construction, the plaintiff bears the burden of demonstrating, through the facts alleged in his live pleading, that immunity from suit has been waived. *Doe v. City of Fort Worth*, 646 S.W.3d 889, 897 (Tex. App.—Fort Worth 2022, no pet.). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226–27; *City of Westworth Vill.*, 558 S.W.3d at 239. If, however, the pleadings are incurably defective—in other words, the allegations affirmatively negate the trial court's jurisdiction—then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *Miranda*, 133 S.W.3d at 227.

To the extent a plea to the jurisdiction challenges the very existence of jurisdictional facts, we look beyond the pleadings and consider evidence submitted by the parties "when necessary to resolve the jurisdictional issues raised," even if the evidence implicates both the court's jurisdiction and the merits of a claim. *Rangel*, 595 S.W.3d at 205 (quoting *Miranda*, 133 S.W.3d at 227). "For a plea that challenges the existence of jurisdictional facts, our standard of review generally mirrors that of a traditional summary judgment: a plaintiff must raise a genuine issue of material fact to overcome the challenge to the trial court's jurisdiction." *Id.*; *Miranda*, 133 S.W.3d at 221, 228.

We address the question of whether the trial court has jurisdiction on a claim-by-claim basis. *Tex. Woman's Univ. v. Rodriguez*, No. 02-22-00278-CV, 2022 WL 17687433, at *8 (Tex. App.—Fort Worth Dec. 15, 2022, no pet.) (mem. op.).

*Leonard v. City of Burkburnett*, No. 02-22-00266-CV, 2023 WL 8940816, at *7–8 (Tex. App.—Fort Worth Dec. 28, 2023, no pet.) (mem. op. on reh'g).

Moreover, if the Texas Legislature assigns exclusive or original jurisdiction to an administrative body, then no right to judicial review exists "unless a statute

16

provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right." *Tex. Disposal Sys. Landfill, Inc. v. Travis Cent. Appraisal Dist.*, No. 22-0620, 2024 WL 3076317, at *3 (Tex. June 21, 2024) (citing *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000)). Even when such a statute provides judicial review, ordinarily the trial court does not acquire jurisdiction until the party exhausts its administrative remedies. *Id.*

Furthermore, when a government defendant challenges jurisdiction based on immunity, the plaintiff must affirmatively demonstrate the trial court's subject-matter jurisdiction by alleging a valid waiver of immunity. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (stating that plaintiff has the burden "to affirmatively demonstrate the trial court's jurisdiction" and that burden includes establishing waiver of immunity in suits against the government).

## B.    Analysis

DCARB is a governmental unit entitled to governmental immunity. *See Bustos v. Bexar Appraisal Dist.*, No. 04-19-00781-CV, 2021 WL 2118373, at *2 (Tex. App.—San Antonio May 26, 2021, pet. denied) (mem. op.) (citing Civil Practice and Remedies Code Section 101.001(3), which defines a "governmental unit"). Appellants argue a variety of grounds in an attempt to defeat DCARB's plea to the jurisdiction based on a central contention that the agreement was a contract that settled issues between Appellants and DCARB. We address each ground in turn.

## 1.     Civil Practice and Remedies Code Section 101.025

One of the grounds that Appellants rely on is Civil Practice and Remedies Code Section 101.025(a). Appellants argue that under Section 101.025(a), "sovereign immunity to suit is expressly waived and abolished to the extent of liability created by the provisions of the chapter. This statutory provision underscores the legislative intent to limit governmental immunity and facilitates the enforceability of settlements involving governmental entities." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.025(a). Appellants further argue that Section 101.025(b) "explicitly allows individuals to sue governmental units for damages allowed by the provisions of the chapter, further reinforcing . . . [A]ppellants' position regarding the authority of [DCARB] to enter into the settlement agreement in the present case." Based on these provisions, Appellants conclude that "this waiver of immunity extends to claims arising under or related to the settlement agreement."

Appellants, however, fail to note that Civil Practice and Remedies Code Section 101.025 is part of the Texas Tort Claims Act (TTCA). As aptly summarized by DCARB, Section 101.025

> provides a limited waiver of immunity and allows governmental units to be held liable for property damage, personal injury, and death in certain limited circumstances. Courts interpreting this provision have found that "the mere invocation of the Act in a petition does not in itself waive sovereign immunity and confer jurisdiction on the trial court . . . [;] the claim raised must fall within the specific scope of the waiver of immunity provided by the Act and so affirmatively demonstrate the trial court's jurisdiction to hear the case." *See City of Mission v. Cantu*, 89 S.W.3d 795, 802 (Tex. App.—Corpus Christi[–Edinburg] 2002, no pet.);

18

*Delaney v. Univ. of Hous*[.], 835 S.W.2d 56, 59 (Tex. 1992) ([holding that] the Tort Claims Act does not apply to breach[-]of[-]contract claims).

DCARB correctly points out that Appellants have not pleaded any tort claims recognized under the TTCA. Because the TTCA's narrow waiver of immunity does not apply to this case, Section 101.025 does not raise a genuine issue of material fact that would defeat DCARB's plea to the jurisdiction.[12]

### 2.    Tax Code Section 41A.015

Another ground that Appellants attempt to rely on to defeat DCARB's governmental immunity is Tax Code Section 41A.015. Appellants argue that

> the matter at hand was subject to limited binding arbitration governed by [Texas] Tax Code § 41A.015, which is a form of alternat[ive] dispute resolution. However, [DCARB] violated procedures relating to scheduling during this arbitration process, thereby undermining the integrity of the proceedings.
>
> . . . .
>
>          . . . Th[e] waiver of governmental immunity is further underscored by the specific context of the limited binding arbitration settlement agreement, governed by [Texas] Tax Code § 41A.015. Despite being subject to this alternat[ive] dispute resolution mechanism, [DCARB's] failure to adhere to the procedures outlined within the arbitration process resulted in a breach of the settlement agreement. Consequently, [DCARB's] actions not only breached the terms of the settlement but also constituted a waiver of governmental immunity with respect to any claims arising from its failure to abide by the arbitration procedures.

---

[12]Moreover, Appellants failed to mention that Section 101.055 specifically states that "[t]his chapter does not apply to a claim arising[] in connection with the assessment or collection of taxes by a governmental unit." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(1).

By arguing that DCARB failed to abide by the arbitration procedures, Appellants contradict the agreement that they are trying to enforce, in which they specifically agreed to withdraw the remainder of the limited binding arbitration proceedings in exchange for DCARB's conducting additional protest hearings.

And as DCARB notes, the Texas Legislature has not created a waiver of immunity for suits arising out of the limited binding arbitration process under Tax Code Section 41A.015. *See generally* Tex. Tax Code Ann. § 42.01 (enumerating matters on which property owners have a right of appeal). All that Section 41A.015(n) states is that "[a]n award under this section does not affect the property owner's right to[] appeal the final determination of a protest by the appraisal review board under Chapter 42," *see id.* § 41A.015(n), and the record demonstrates that Appellants did not timely file a petition for review under Chapter 42.[13]

---

[13]In *Sadeghian v. Denton Cent. Appraisal Dist.*, No. 02-23-00364-CV, 2024 WL 1318252, at *1–4 (Tex. App.—Fort Worth Mar. 28, 2024, no pet.) (mem. op.), which appears to be a related case, we upheld summary judgment for DCAD on its affirmative defense of limitations because Appellants failed to timely serve their Chapter 42 petition for review on DCAD. Appellants attempted to argue that their delay in serving DCAD was due to the fact that their "properties [had] bec[o]me part of legally binding arbitration" under Section 41A.015 and that they believed they could not serve DCAD until the arbitration process was completed. *Id.* at *3. We held that a pending Section 41A.015 arbitration does not prevent or excuse a property owner from effecting service in a Chapter 42 appeal involving the same property. *Id.* And we further stated that "even if Appellants could show that their properties' involvement in a pending Section 41A.015 arbitration proceeding would have excused them from serving DCAD, their summary[-]judgment evidence failed to demonstrate that they had properly invoked Section 41A.015's limited arbitration process in the first place" because they did not serve notice on all the required recipients, nor did

As noted above, to pursue an appeal under Chapter 42, Appellants were required to file a petition for review with the district court within sixty days after receiving notice that a final order had been entered. *See* Tex. Tax Code Ann. § 42.21(a). Although the record does not contain copies of DCARB's final orders, pursuant to Section 41.47, DCARB was required to issue final orders within thirty days of the protest hearings—the last of which was scheduled for August 18, 2022; thus, the final orders were required to be issued by September 17, 2022.[14] *See id.* § 41.47(d), (f)(1). Appellants, however, did not file suit until September 18, 2023.[15] *See Cameron Appraisal Dist.*, 194 S.W.3d at 502 (stating that administrative decisions are final if not appealed to the district court within the statutory time limit); *Appraisal Review Bd. v. Int'l Church of Foursquare Gospel*, 719 S.W.2d 160, 160 (Tex. 1986) (per curiam) (stating that compliance with Section 42.21 is jurisdictional); *Fort Bend Cent.*

---

they serve the required recipients within five days after the alleged procedural violations occurred. *Id.* at *4.

[14]Although Appellants state in their brief that they "were not formally notified of the dismissals via letter," Appellants knew at the latest by January 7, 2023—the date of the parties' agreement—that DCARB had set the value on the properties based on Appellants' representative's failure to appear at the protest hearings. Within two days, Appellants proceeded with limited binding arbitration instead of following the terms of the agreement. Appellants then waited until September 18, 2023, to file their original petition.

[15]To the extent that Appellants attempt to cabin their claim as one arising under Section 25.25(d), the same result would follow because although Section 42.01(a)(1)(B) entitles a property owner to appeal a motion filed under Section 25.25, Appellants did not file a Chapter 42 appeal. *See* Tex. Tax Code Ann. §§ 42.01(a)(1)(B), 42.21(a).

*Appraisal Dist. v. Am. Furniture Warehouse Co.*, 630 S.W.3d 530, 536 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (same). Moreover, nowhere in their petition, in their response to DCARB's plea to the jurisdiction, or in their brief do Appellants claim that they have ever pursued a Chapter 42 appeal.[16]

Accordingly, Section 41A.015 neither provides a basis to challenge DCARB's plea to the jurisdiction nor raises a genuine issue of material fact that would defeat DCARB's plea to the jurisdiction.

### 3.     Tax Code Section 41.45(f)

Although Appellants did not plead Section 41.45(f) in their petition, they state in their brief that they "asserted the right to appeal [DCARB's decisions] pursuant to Texas Tax Code § 41.45" in their response to DCARB's plea to the jurisdiction. Appellants' response quotes Section 41.45(f) and requests "for the properties that were agreed upon to be reheard as per the agreement between [the] parties." Similarly, Appellants' brief merely quotes Section 41.45(f) but does not explain how that section waives DCARB's immunity under the facts here.

Assuming without deciding that Appellants timely raised Section 41.45(f), the very wording of the statute shows that it does not apply here: "A property owner *who*

---

[16]This distinguishes this case from the recent opinions from the Texas Supreme Court in which taxpayers invoked a Chapter 42 remedy that vested the trial court with jurisdiction. *See, e.g.*, *Oncor Elec. Delivery*, 2024 WL 3075706, at *1 (addressing whether questions regarding the validity and scope of a statutory agreement under Section 1.111(e) implicated the trial court's subject-matter jurisdiction over a suit for judicial review under Section 42.01); *Tex. Disposal Sys. Landfill*, 2024 WL 3076317, at *4 (determining the scope of the trial court's de novo trial under Chapter 42).

*has been denied a hearing to which the property owner is entitled under this chapter* may bring suit against the appraisal review board by filing a petition or application in district court to compel the board to provide the hearing." Tex. Tax Code Ann. § 41.45(f) (emphasis added). The record demonstrates that DCARB set a hearing on Appellants' protests for July 1, 2022, but rescheduled at Appellants' request (though it is unclear what ground was asserted to accomplish the rescheduling) for July 12, 2022; July 18–20, 2022; and August 15–18, 2022. DCARB thus did not deny Appellants a hearing to which they were entitled under Chapter 41; instead, Appellants' representative failed to appear at the scheduled hearings, so the protests were dismissed. Case law is clear that had DCARB "refused to schedule a hearing on [Appellants'] protest[], [Appellants] could have petitioned the trial court to compel [DCARB] to conduct a hearing under [S]ection 41.45(f)[ . . . b]ut because . . . [Appellants] received notice of but did not attend the [hearing], . . . [S]ection 41.45(f) does not apply." *See Fort Bend Cent. Appraisal Dist. v. McGee Chapel Baptist Church*, 611 S.W.3d 443, 449 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see also Harris Cnty. Appraisal Review Bd. v. Cyngita Props. Inc.*, Nos. 13-20-00550-CV, 13-20-00551-CV, 2021 WL 3196528, at *4 (Tex. App.—Corpus Christi–Edinburg July 29, 2021, no pet.) (mem. op.) (holding that because the ARB did not deny taxpayers a hearing on their protests, Section 41.45(f) did not waive immunity).[17]

---

[17]To the extent that Appellants argue that they were denied a hearing pursuant to the terms of their agreement with DCARB, those arguments are addressed below in B.4.

Alternatively, even assuming that Section 41.45(f) applies to Appellants' claims, any such claims would be untimely under the Tax Code. As DCARB succinctly explained in its brief,

> [w]hile there is no explicit deadline for filing a suit under Section 41.45(f), the Austin Court of Appeals has held that the deadline in Section 42.21(a) of the Texas Tax Code is applicable to Section 41.45(f). *Unified Hous. of Parkside Crossing, LLC v. Appraisal Review Bd. of Williamson Cnty.*, No. 03-09-00217-CV, 2010 WL 2133955, at *4 (Tex. App.— Austin May 22, 2010, no pet.)[ (mem. op.)]. That [c]ourt explained that reading Section 41.45(f) without any deadline would circumvent the exclusive appeals provisions of Chapter 42. [*Id.*] ([stating that] "[t]here is no way to read [S]ection 41.45(f) as [appellant] suggests without undermining the exclusive-appeal provisions of [C]hapter 42. Such a reading would be contrary to legislative intent").

> The applicable deadline provides that a petition for review of an appraisal review board order must be filed within [sixty] days of receiving notice of the order. Tex. Tax. Code [Ann.] § 42.21(a). The [sixty]-day deadline for appealing the underlying protest hearings, which occurred in July and August of 2022, has long passed. . . . Allowing Appellants to assert Section 41.45 claims over a year after the actual hearings would circumvent the purpose of the Texas Tax Code. [*See*] *Anderton v. Rockwall Cent. Appraisal Dist.*, 26 S.W.3d 539, 543 (Tex. App.—Dallas 2000, pet. denied) ("The legislature's intent, as may be determined from the overall tax appraisal protest scheme, is that the appraisal rolls become fixed after property owners have been given adequate time to file their protests").

Because Section 41.45(f) does not apply to the facts here, and alternatively because a Section 41.45(f) claim was not raised within sixty days after receiving notice of the order, Appellants' reliance on this statute does not raise a genuine issue of material fact that would defeat DCARB's plea to the jurisdiction.

### 4. The Parties' Agreement

Appellants also make general statements in their brief that DCARB waived its immunity by (1) voluntarily entering into a contract with private citizens and (2) breaching the terms of the agreement. Appellants point to no statutory provision waiving DCARB's immunity to suit under these circumstances but instead cite to several cases. The cases cited by Appellants, however, do not show that immunity was waived.

We begin by noting that the agreement at issue falls outside the statutory framework of the administrative and judicial remedies established by the Tax Code. Thus, there is no waiver in the Tax Code allowing suit from such an agreement.

We therefore proceed to review the cases cited by Appellants to determine if case law has provided a waiver of immunity for Appellants' breach-of-contract claim. The cases cited do Appellants more harm than good. In summary, they establish the following: (1) entering into a contract does not waive a governmental entity's immunity from suit; (2) there is a statutory waiver of immunity for contracts involving goods a services—a provision that has no application to Appellants' claims; and (3) for a settlement agreement to constitute a contract waiving immunity, it must settle an underlying claim for which immunity is also waived.

Appellants first cite *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006), stating that "the court held that by entering into a contract, a governmental entity consents to suit to enforce the terms of that contract." *Tooke*, however, states that "[b]y entering

into a contract, a governmental entity necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement, but it does not waive immunity from suit." *Id.* at 332. *Tooke* further states, "We have consistently deferred to the [Texas] Legislature to waive sovereign immunity from suit[] because this allows the Legislature to protect its policymaking function. More specifically, we defer to the [Texas] Legislature to waive immunity from contract claims." *Id.* (footnote omitted). Thus, *Tooke* does not hold that merely because a governmental entity enters into a contract it waives its immunity from suit.

Appellants next cite *Catalina Development, Inc. v. County of El Paso*, 121 S.W.3d 704 (Tex. 2003), claiming that the court in that case emphasized "that when a government[al] entity engages in contractual agreements, it implicitly waives its immunity with respect to claims arising from those agreements." In *Catalina*, however, the court agreed with the governmental entity that acts of contract formation "do not, by themselves, waive immunity from suit." *Id.* at 706.

Appellants further cite *City of San Antonio ex rel. City Public Service Board v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597 (Tex. App.—San Antonio 2012, pet. denied).[18] Appellants contend that "the waiver encompasses not only the initial

_____

[18]Although not noted by Appellants, this case was abrogated by *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427 (Tex. 2016). *Wasson* held that "the common-law distinction between governmental and proprietary acts—known as the proprietary-governmental dichotomy—applies in the contract-claims context just as it does in the tort-claims context." *Id.* at 439. As noted in *Wasson*, "[w]hen performing governmental functions, political subdivisions derive governmental immunity from the

agreement but also any subsequent claims arising from or related to that agreement." *City of San Antonio* reiterates that "[i]t has long been recognized that it is the [Texas] Legislature's sole province to waive immunity from suit." *Id.* at 601. The court then goes on to discuss how Chapter 271 of the Local Government Code expressly waives qualifying local governmental entities' immunity from suit for certain breach-of-contract claims but concludes that "the legislative waiver of immunity in the contract context is restricted to suits for breach of a written contract for goods and services." *Id.* at 601–02 (discussing Tex. Loc. Gov't Code Ann. § 271.152). Appellants, however, do not cite to this provision, nor does it apply because the agreement at issue was not a contract for goods and services.

As part of their waiver argument, Appellants also cite *City of Corinth v. NuRock Development, Inc.*, 293 S.W.3d 360 (Tex. App.—Fort Worth 2009, no pet.). But that case states that "[a]lthough a governmental entity like the City waives its immunity from *liability* when it contracts with private citizens, it does not waive its immunity from *suit* solely by entering into such a contract." *Id.* at 365. *City of Corinth* deals with enforcing a settlement agreement and discusses *Texas A & M University–Kingsville v. Lawson*, 87 S.W.3d 518 (Tex. 2002) (plurality op.), which is another case relied on by Appellants. *City of Corinth*, 293 S.W.3d at 365. *City of Corinth* explained that in *Lawson*,

state's sovereign immunity." *Id.* at 433 (quoting *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011)). Tax collection is a governmental function. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(26). DCARB thus has governmental immunity when performing the governmental function of tax collection.

a plurality of the Texas Supreme Court concluded that when a governmental entity settles a claim for which immunity from suit has been waived, immunity from suit is also waived for a breach of the settlement agreement. *Id.* (citing *Lawson*, 87 S.W.3d at 521–22). The plurality reasoned that "when a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued." *Id.* (citing *Lawson*, 87 S.W.3d at 521). Here, however, Appellants have not shown that DCARB "settle[d] a claim for which immunity from suit has been waived"; thus, Appellants do not receive the accompanying benefit, i.e., that "immunity from suit is also waived for a breach of the settlement agreement."[19] *See id.*; *see also Lawson*, 87 S.W.3d at 521–22.

---

[19]Because *Lawson* does not help Appellants in attempting to demonstrate a waiver of immunity to pursue their breach-of-contract claim against DCARB, we need not analyze the other two opinions—*Hughes v. Tom Green County*, 573 S.W.3d 212 (Tex. 2019), and *City of Pharr v. Garcia*, 581 S.W.3d 930, 933 (Tex. App.—Corpus Christi–Edinburg 2019, no pet.)—that Appellants cite that discuss *Lawson*. *See generally* Tex. R. App. P. 47.1. Moreover, as pointed out by DCARB, Appellants ignored applicable cases "that severely limit the applicability of *Lawson*'s waiver of immunity in cases where the parties reach[ed] a settlement agreement with a governmental entity prior to suit." *See generally Tex. Dep't of Health v. Neal*, No. 03-09-00574-CV, 2011 WL 1744966, at *4–5 (Tex. App.—Austin May 6, 2011, pet. denied) (mem. op.) (declining to extend *Lawson*—where the claimant had a statutorily recognized claim (for which the State had waived immunity) pending in the trial court when he settled with the State—to a situation where the claimant had not even initiated, much less completed, the administrative process that could have led to a waiver of the State's immunity and bestowed jurisdiction on the trial court); *Donna ISD v. Gracia*, 286 S.W.3d 392, 394–95 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) (discussing *Lawson* and holding that teacher's breach-of-contract claim against school district was barred by sovereign immunity). As noted in *Neal*, a party cannot ignore an administrative remedy and then succeed on an argument that a settlement agreement preserves the party's administrative remedy.

The cases cited by Appellants thus support DCARB's position that the legislature must waive immunity from suit.[20]  Because the legislature has not done so for the agreement that Appellants attempt to sue on, we conclude that the trial court properly granted DCARB's plea to the jurisdiction.

Instead of invoking the remedies of the Tax Code, Appellants filed suit and opposed DCARB's plea to the jurisdiction with arguments that fail to establish a waiver of DCARB's governmental immunity.  We overrule Appellants' sole issue.

---

[20]On page 12 of Appellants' brief, they set forth the following cases and summaries:

- *Lane-Valente Indus. (Nat'l), Inc. v. J.P. Morgan Chase, N.A.*, 468 S.W.3d 200 (Tex. App.—Houston [14th Dist.] 2015, no pet.): "[T]he court affirmed that settlement agreements are governed by contract law, emphasizing the contractual nature of such agreements."

- *Bergenholtz v. Eskenazi*, 521 S.W.3d 397 (Tex. App.—El Paso 2017, pet. denied): "[This case] underscores that the interpretation of a settlement agreement is subject to the same principles of contract law."

- *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117 (Tex. App.—El Paso 2007, no pet.) (op. on reh'g), and *Hur v. City of Mesquite*, 893 S.W.2d 227 (Tex. App.—Amarillo 1995, writ denied): "[Both cases] reaffirm that voluntary agreements reached through mediation, including settlement agreements, are legally binding and enforceable."

Because these cases do not have any application to the specific issue before us, we do not discuss them.  *See* Tex. R. App. P. 47.1.

## V.  Conclusion

Having overruled Appellants' sole issue, we affirm the trial court's order granting DCARB's plea to the jurisdiction.

/s/ Dabney Bassel
Dabney Bassel
Justice

Delivered:  August 1, 2024